STATE OF VERMONT
SUPERIOR COURT
WASHINGTON UNIT

| | |
|---|---|
| STATE OF VERMONT, ) | CIVIL DIVISION |
|     Plaintiff ) | Docket No. 282-5-13 Wncv |
| ) | |
| v. ) | |
| ) | |
| MPHJ TECHNOLOGY INVESTMENTS, LLC ) | |
|     Defendant ) | |

## CONSUMER PROTECTION COMPLAINT

### I. Introduction

1. The Vermont Attorney General brings this suit under the Vermont Consumer Protection Act, 9 V.S.A. §§ 2451 *et seq.* in response to consumer fraud violations by Defendant MPHJ Technology Investments, LLC. Defendant has engaged in unfair and deceptive acts by sending a series of letters to many small businesses and non-profit organizations in Vermont. The letters threaten patent litigation if the businesses do not pay licensing fees. The Attorney General seeks injunctive relief, restitution and other compensation to consumers, civil penalties, fees and costs, and other appropriate relief.

### II. Parties, Jurisdiction and Related Matters

2. Defendant MPHJ Technology Investments, LLC ("MPHJ Technology") is a Delaware Limited Liability Company that claims to be located at 1220 North Market Street, Ste. 806, Wilmington, Delaware 19801. This is the address of Registered Agents Legal Services, LLC, MPHJ Technology's registered agent in Delaware.

3. MPHJ Technology operates in Vermont through forty wholly-owned shell subsidiary companies: AbsMea, LLC; AccNum, LLC; AdzPro, LLC; BarMas, LLC; BetNam,

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

LLC; BriPol, LLC; BruSed, LLC; BunVic, LLC; CalLad, LLC; CalNeb, LLC; CapMat, LLC; ChaPac, LLC; CraVar, LLC; DayMas, LLC; DesNot, LLC; DreOcc, LLC; DucPla, LLC; ElaMon, LLC; EntNil, LLC; EquiVas, LLC; FanPar, LLC; FasLan, LLC; FolNer, LLC; FraMor, LLC; GimVea, LLC; GosNel, LLC; GraMet, LLC; HadOpp, LLC; HanMea, LLC; HarNol, LLC; HeaPle, LLC; InaNur, LLC; InkSen, LLC; IntPar, LLC; IsaMai, LLC; JamVor, LLC; JitNom, LLC; JonMor, LLC; JudPur, LLC; and JusLem , LLC (collectively, the "Shell LLCs").  Each of the Shell LLCs is a Delaware Limited Liability Company that claims to be located at 40 East Main Street, #19, Newark, Delaware 19711, a UPS Store.

4. Jay Mac Rust, a Texas attorney, is the manager of MPHJ Technology.  Calls from letter recipients to any Shell LLC are directed to Mr. Rust if there is a significant problem.

5. Mr. Rust is also the signatory of every patent's "Exclusive License Agreement" between MPHJ Technology and each Shell LLC.  He has signed each agreement on behalf of both MPHJ Technology and the Shell LLC.

6. MPHJ Technology controls the operations of the Shell LLCs.

7.  At all times relevant to this Complaint, Defendant MPHJ Technology did business in Vermont and solicited payments from Vermont consumers through its wholly owned subsidiaries.

8. The Vermont Attorney General is authorized under the Vermont Consumer Protection Act, 9 V.S.A. § 2458(b), to sue to enforce the Act's prohibitions on unfair and deceptive acts and practices in commerce.

9. This Court has personal jurisdiction over Defendant and is the proper venue for this action, based on the unfair and deceptive letters sent, or otherwise authorized, by Defendant throughout Vermont, including in Washington County.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

10. This action is in the public interest.

### III. Statutory Framework

11. The Vermont Consumer Protection Act, 9 V.S.A. § 2453(a), prohibits unfair and deceptive acts and practices in commerce.

12. Businesses are considered consumers under the Vermont Consumer Protection Act, except where the goods or services at issue are being resold by the business.

13. The acts described below, and summarized in paragraphs 14-54, constitute unfair and deceptive acts and practices in commerce.

### IV. Facts

14. Since September 2012, numerous Vermont small businesses have received letters from one of the Shell LLCs.

15. Defendant, acting through the Shell LLCs, has sent similar letters to hundreds or thousands of businesses outside Vermont.

16. One Vermont recipient of the letters was Lincoln Street, Inc., a Springfield, Vermont non-profit that operates on state and federal funding to bring home care to developmentally disabled Vermonters. Another Vermont recipient was ARIS Solutions, a non-profit that provides fiscal agent services to Vermonters with disabilities to assist them with daily living tasks.

17. The letters allege potential infringement of MPHJ Technology's patents, and request that the recipients either purchase licenses or confirm that they are not infringing the patents. *See* Exs. A-C.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

18. The patents that Defendant owns and that are referenced in these letters sent to Vermont businesses were previously the subject of litigation brought by the prior owner of the patents. Those lawsuits were voluntarily dismissed by the patent-holder prior to any determination of their validity. No court has ruled on the validity of the patents.

19. The earliest patent referenced in these letters was filed in 1998 and issued in 2001.

20. On information and belief, no attempt to enforce the patents occurred until 2012.

21. Exhibit A is a redacted copy of the first letter sent to targeted businesses.

22. The first letter began, "We have identified your company as one that appears to be using the patented technology."

23. The first letter further stated:

> You should know also that we have had a positive response from the business community to our licensing program. As you can imagine, most businesses, upon being informed that they are infringing someone's patent rights, are interested in operating lawfully and taking a license promptly. Many companies have responded to this licensing program in such a manner. Their doing so has allowed us to determine that a fair price for a license negotiated in good faith and without the need for court action is payment of [$900 – $1200] per employee.

24. The first letter demanded that if the recipient business did not believe it was infringing, it fill out a questionnaire and produce extensive and burdensome documentation to prove that it was not infringing. *See* Ex. A, p. 4, para 2.

25. Exhibit B is a redacted copy of the third letter in the series of letters sent to Vermont businesses.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

26. Exhibit C is a redacted copy of a draft complaint sent to Vermont businesses with the second or third letter.

27. The second and third letters were sent by a Texas law firm, Farney Daniels LLP ("Farney Daniels"). The second and third letters state that Farney Daniels is sending the letters on behalf of the Shell LLC that sent the first letter.

28. These later letters claimed that, because the recipients did not respond to the first, or first and second, letters, it was reasonable to assume that the recipient was infringing the patents, and Defendant had therefore retained patent counsel.

29. Some businesses that have complained to the Attorney General never received the first or second letters, and only received a third letter that referred to the prior letters.

30. The second letter stated that Farney Daniels' representation can involve litigation, which could be avoided if the recipient were to respond in two weeks to discuss licensing the patents.

31. The third letter twice promised to bring litigation:

> [I]f we do not hear from you within two weeks from the date of this letter, our client will be forced to file a Complaint against you for patent infringement in Federal Court where it will pursue all of the remedies and royalties to which it is entitled. . . .
>
> [W]e must hear from you within two weeks of the date of this letter. Given that litigation will ensue otherwise, we again encourage you to retain competent patent counsel to assist you in this matter. (Emphasis in original).

32. The third letter, and sometimes the second letter, attached a draft complaint against the receiving business, naming the Shell LLC that sent the letter as the plaintiff. *See* Exhibit C.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

5

33. Defendant states in the letters that it will target additional Vermont businesses as part of its "ongoing vigorous licensing program."

34. The three letters Defendant sent to Vermont businesses contain statements that are false, deceptive, and likely to mislead the businesses that received them.

35. On information and belief, Defendant performed little, if any, due diligence to confirm that the targeted businesses were actually infringing its patents prior to sending these letters.

36. Defendant targeted small businesses in commercial fields that were likely unrelated to patent law.

37. On information and belief, Defendant has not received a positive response from the business community to its licensing program.

38. Nationwide, only a tiny fraction of the businesses that have received these letters, not "many" or "most," have purchased licenses.

39. The actual average licensing fee negotiated by Defendant was less than $900.

40. A business that receives a letter from a law firm that mentions the possibility of litigation is reasonably likely to infer that the threat of potential litigation is real.

41. Neither Defendant nor any Shell LLC has filed a single lawsuit in Vermont or any other state.

42. Over 130 days have passed since Vermont businesses began receiving letters promising that they would be sued if they did not respond within two weeks.

43. On information and belief, at the time the third letters were sent, and Defendant's counsel promised to sue the recipient businesses, Defendant had not engaged

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

in any further investigation of the recipient businesses or determined that the businesses were actually infringing its patents.

44. At the time the letters were sent to Vermont businesses, Defendant had not retained local Vermont counsel, as would be needed to prepare for litigation in Vermont.

45. Obtaining an opinion from qualified patent counsel as to whether a patent is valid and whether a potential patent-infringement action is likely to succeed can cost thousands of dollars, and can exceed the cost of the requested licenses.

46. Even an unsuccessful patent-infringement action may cost the defendant in excess of $1-2 million if the defendant chooses not to settle.

47. In certain circumstances, defendants in patent litigation may be able to recover their costs from plaintiffs, but that requires first enduring the entirety of the litigation.

48. If the defendant in a patent lawsuit successfully moves for an award of fees and costs, but the plaintiff is an undercapitalized shell company, the defendant will not be reimbursed for the costs of litigation.

49. In the letters sent to Vermont businesses, each Shell LLC claimed to possess an exclusive license, which would permit it to enforce the patents against businesses within a specific geographic area and commercial field.

50. Each Shell LLC was actually assigned a combination of geographic and commercial fields that was identical to at least one other Shell LLC.

51. Given the overlapping assignments, the Shell LLCs do not possess exclusive licenses.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

52. The Shell LLCs mostly targeted businesses in Vermont that were located outside the geographic regions in which the Shell LLCs claimed to be legally permitted to enforce the patents.

53. Despite the reasonable inference that counsel sending a letter threatening litigation has reviewed the case and found it meritorious in accordance with his or her professional and ethical obligations, on information and belief, that review did not take place.

54. Defendant acted in bad faith by sending these letters to Vermont businesses.

## V. Cause of Action: Unfair and Deceptive Trade Practices

55. Plaintiff realleges and incorporates by reference herein each and every allegation contained in the preceding paragraphs 1 through 54.

56. Defendant engaged in unfair trade practices in commerce in violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a), including:

   a. Stating that litigation would be brought against the recipients, when Defendant was neither prepared nor likely to bring litigation;

   b. Using legal counsel to imply that Defendant had performed a sufficient pre-suit investigation, including investigation into the target businesses and their potentially infringing activities, that would be required to justify filing a lawsuit;

   c. Targeting small businesses that were unlikely to have the resources to fight patent-litigation, or even to pay patent counsel;

   d. Sending letters that threatened patent-infringement litigation with no independent evidence that the recipients were infringing its patents;

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

e.  Shifting the entire burden of the pre-suit investigation onto the small businesses that received the letters;

f.  Propounding burdensome information demands on any business that claimed not to infringe the patents; and

g.  Using shell corporations in order to hide the true owners of the patents, avoid liability, and encourage quick settlements.

57. Defendant engaged in deceptive trade practices in commerce in violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a), by making deceptive statements in the threatening letters which would likely lead consumers to believe the following:

a.  Defendant would sue the target businesses if they did not respond within two weeks;

b.  Defendant would sue the target businesses if they did not pay money;

c.  Defendant had a reasonable basis for identifying the target businesses as infringing its patents;

d.  Subsidiary Shell LLCs were exclusive licensees able to enforce the patents;

e.  Target companies were within the sending Shell LLC's alleged area of exclusivity;

f.  Defendant's licensing program had received a positive response from the business community;

g.  Many or most businesses were interested in promptly purchasing a license from Defendant;

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

      h.  Based on prior licensing agreements, the fair price of a license was between $900 and $1200 per employee;

      i.  Target businesses were receiving a third letter, which refers to two prior letters, when in many cases recipients had received no prior letters.

WHEREFORE Plaintiff State of Vermont requests judgment in its favor and the following relief:

1. A permanent injunction prohibiting Defendant from engaging in any business activity in, into or from Vermont that violates Vermont law.

2. A permanent injunction requiring Defendant to stop threatening Vermont businesses with patent-infringement lawsuits.

3. Full restitution to all Vermont businesses who suffered damages due to Defendant's acts.

4. Civil penalties of up to $10,000.00 for each violation of the Consumer Protection Act.

5. The award of investigative and litigation costs and fees to the State of Vermont.

6. Such other relief as the Court deems appropriate.

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

Dated: May 8, 2013

                              STATE OF VERMONT

                              WILLIAM H. SORRELL
                              ATTORNEY GENERAL

                              By: _____
                              Bridget C. Asay
                              Ryan Kriger
                              Assistant Attorneys General
                              Vermont Attorney General's Office
                              109 State Street
                              Montpelier, VT 05609
                              Tel. (802) 828-5500
                              basay@atg.state.vt.us
                              rkriger@atg.state.vt.us

Office of the
ATTORNEY
GENERAL
109 State Street
Montpelier, VT
05609

11