# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| STATE OF VERMONT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13-cv-00170-wks |
| | ) | |
| MPHJ TECHNOLOGY | ) | |
| INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

WILLIAM H. SORRELL
ATTORNEY GENERAL

Bridget C. Asay
Ryan Kriger
Naomi Sheffield
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
Tel.  (802) 828-5500
basay@atg.state.vt.us
rkriger@atg.state.vt.us
nsheffield@state.vt.us
*Attorneys for Plaintiff, State of Vermont*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................ii

INTRODUCTION .......................................................................................... 1

FACTS ........................................................................................................ 1

ARGUMENT ................................................................................................ 4

I.   Federal question jurisdiction is limited to complaints that arise
     under the patent laws or require the court to necessarily
     determine a substantial question of patent law ....................................... 5

II.  The State's consumer protection complaint does not arise under
     federal patent law .................................................................................. 11

     A.   The State has pled only a state-law cause of action and any
          potential defense is irrelevant .......................................................... 11

     B.   The complaint does not require a court to necessarily
          resolve a substantial or significant issue of federal patent
          law ................................................................................................. 15

          1.   The State's claims are supported by many alternative
               theories, the majority of which are unrelated to patent
               law ............................................................................................ 15

          2.   To the extent a court might address questions of patent
               law in deciding this case, those patent-law issues are
               neither substantial nor significant to the federal system ......... 18

III. The State as a party destroys diversity jurisdiction .............................. 21

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010) ............ 19

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.
    Supp. 2d 1042 (D. Kan. 1999) ................................................................ 17, 18

*Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld,
    L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) ............................................................ 9

*Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000) ........................ 18

*American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257
    (1916) ................................................................................................. 7, 13, 14

*Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F. Supp. 2d 315 (D.
    Vt. 1999) ............................................................................................................ 13

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006) ................................... 4

*Bonzel v. Pfizer, Inc.*, 439 F.3d 1358 (Fed. Cir. 2006) ..................................... 16

*Burlington Indus., Inc. v. Solutia, Inc.*, 310 F. App'x 594 (4th Cir.
    2009) ................................................................................................................. 12

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ............................................. 1

*Chicago Tribune Co. v. Bd. Of Trustees of the Univ. of Ill.*, 680 F.3d
    1001 (7th Cir. 2012) ......................................................................................... 14

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ..... 6, 7, 8, 16

*ClearPlay, Inc. v. Abecassis*, 602 F.3d 1364 (Fed. Cir. 2010) .......................... 16

*Discovision Assocs. v. Fuji Photo Film Co., Ltd.*, 2007 WL 5161825
    (S.D.N.Y. Oct. 29, 2007) .............................................................................. 17

*Doukas v. Ballard*, 825 F. Supp. 2d 377 (E.D.N.Y. 2011) .............................. 11

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677
    (2006) ............................................................................................................ 6, 20

*Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945) .............................. 22

*Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d
1329 (Fed. Cir. 2013) ................................................................... 10, 13, 20

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S.
Cal.*, 463 U.S. 1 (1983).................................................................... 7, 8

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d
1367 (Fed. Cir. 2004) ................................................................... 12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.
308 (2005) .................................................................................... 14, 20

*Gunn v. Minton*, 133 S. Ct. 1059 (2013) ................................................... passim

*Hand v. Chrysler Corp.*, 997 F. Supp. 553 (D. Vt. 1998) ................................... 4

*In Re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819 (E.D. Mich.
1999)............................................................................................ 18

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir.
2009)............................................................................................ 9

*Krisel v. Duran,* 386 F.2d 179 (2d Cir. 1967) .......................................... 22

*Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277
(Fed. Cir. 2010) ........................................................................... 9

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) .............. 22

*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir. 1994) ...................... 5

*Maine v. Data General Corp.*, 697 F. Supp. 23 (D. Me. 1988) .................. 23, 24

*Marcus v. AT & T Corp.*, 138 F.3d 46 (2d Cir. 1998)................................... 5, 13

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) ........................... 9

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)................................... 13

*Moor v. County of Alameda*, 411 U.S. 693 (1973) ...................................... 21

*MyInfoGuard, LLC v. Sorrell*, 2012 WL 5469913 (D. Vt. Nov. 9,
2012)............................................................................................ 4, 22, 23

*Nanomedicon, LLC v. Research Found. of New York*, 784 F. Supp. 2d
153 (E.D.N.Y. 2011) .................................................................. 9, 16

*New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473
(1912) ................................................................................................ 6

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978)........................... 21

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013) .......... 22, 23, 25

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir.
2004)................................................................................................. 19

*Trevino v. Sw. Bell Telephone Co., L.P.*, 2005 WL 2346950 (S.D. Tex.
Sept. 26, 2005) ............................................................................... 7

*Urata v. Canare Elec. Co. Ltd.*, 2013 WL 2395049 (D.N.J. May 29,
2013)........................................................................................... 14, 21

*West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F.
Supp. 2d 984, 998 (S.D. W. Va. 2012) ......................................... 24

*Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed Cir. 1999)................... 12

**Statutes**

28 U.S.C. § 1332(a)................................................................. 21, 22, 23

28 U.S.C. § 1332(d)......................................................................... 23

28 U.S.C. § 1338(a)..................................................................... 6, 17

9 V.S.A. § 2453(a) ........................................................................... 11

9 V.S.A. § 2461 ............................................................................... 23

**Other Authorities**

15 James Wm. Moore, et al., *Moore's Federal Practice*, ¶ 102.57[7]
(3d ed. 2013)................................................................................... 22

Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker
for using scanners*, Ars Technica (Apr. 7, 2013)............................. 3

## INTRODUCTION

Defendant MPHJ Technology Investments, LLC, acting through wholly owned shell companies, sent scores of threatening letters to Vermont small businesses and non-profit organizations. The letters contained false and misleading statements, demanded the payment of money, and threatened immediate litigation that MPHJ was not prepared to bring. MPHJ's conduct violated Vermont's Consumer Protection Act, and the Attorney General accordingly filed this action seeking civil penalties and other relief available under state law.

This is a state-law case and it belongs in state court. True, the letters sent by MPHJ alleged patent infringement. But the State's consumer fraud claims have nothing to do with the validity of MPHJ's patents. Nor does the State's complaint address whether, in fact, any Vermont businesses are infringing the patents. Even assuming the patents may be valid, and some Vermont businesses may have infringed those patents, the letters sent to Vermont consumers were unfair and deceptive. Although federal jurisdiction over patent law is broad, it does not stretch this far. This Court lacks jurisdiction and the case should be remanded to state court.

## FACTS

The State's complaint (ECF Doc. 6) sets forth the relevant facts. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (jurisdiction is governed by plaintiff's "well-pleaded complaint"). In late 2012, forty shell companies, wholly owned by MPHJ, began mailing a series of letters to Vermont businesses and non-

1

profits (¶¶ 3, 14). The letters are identical except for the name of the recipient and the name of the shell company listed as the sender. The first letter said that the recipient had been identified as a company that "appears to be" using patented technology (¶ 22 & Doc. 6-1, Compl. Ex. A). The letter described a "typical example" of an infringing system: an office network with a server, computers, and a scanner that "permits the scanning of a document directly to [sic] employee email address as a pdf attachment" (Doc. 6-1, Ex. A, at 2.). The letter asked the recipient to provide extensive documentation demonstrating that it was not infringing the patents or to contact the shell company to negotiate a license (¶ 24 & Doc. 6-1, Ex. A).

A law firm, Farney Daniels LLP, sent a second, similar letter reiterating the claims of the first letter and threatening litigation (¶ 27).

Farney Daniels then sent a third letter to the same recipients (¶ 27 & Doc. 6-1, Compl. Ex. B). Some recipients in fact received only the third letter, although the third letter assumes no response to the first two letters (¶ 29). The third letter stated, "[a]s you have not contacted us to explain that you do not have an infringing system, we reasonably can only assume that the system you are using is covered by the patents" (¶ 28 & Doc. 6-1, Ex. B). According to the third letter, if Farney Daniels did not receive a response from the recipient within two weeks, "litigation will ensue," and the recipient should retain competent patent counsel (¶ 31). The third letter often included a draft complaint naming the shell company as the plaintiff and the recipient as the defendant (¶ 32 & Doc. 6-1, Compl. Ex. C).

When these letters were sent, MPHJ was not prepared to bring these threatened lawsuits (¶¶ 35, 41-44). MPHJ had not retained local counsel, had not confirmed that any of the threatened recipients were infringing the patents, and had not confirmed whether the shell companies were the appropriate parties to enforce the patents (¶¶ 35, 41-44, 49-52). MPHJ has not filed any lawsuits alleging patent infringement by the businesses that received these threatening letters (¶ 41).[1]

As the State alleges, the letters contained deceptive and misleading statements. The deceptive statements include:

- most businesses chose to promptly acquire licenses (¶¶ 23, 38);

- the licensing program received a positive response from the business community (¶¶ 23, 37);

- the recipient was identified as potentially infringing (¶¶ 22, 35);

- the recipient had received two prior letters when often they had not (¶ 29); and

_____

[1] Media reports document that MPHJ has sent similar threatening letters to businesses across the country during the past year. *See, e.g.*, Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker for using scanners*, Ars Technica (Apr. 7, 2013) http://arstechnica.com/tech-policy/2013/04/meet-the-nice-guy-lawyers-who-want-1000-per-worker-for-using-scanners/. Yet a national PACER search confirms that MPJH has not filed any lawsuits enforcing the patents described in the letters. One recipient in Louisiana filed a declaratory judgment action against IntPar LLC, one of the shell companies. In response, IntPar moved to dismiss, claiming among other things that IntPar was not the proper defendant and could not be sued in Louisiana – even though IntPar had threatened imminent suit and sent a draft complaint for a lawsuit in Louisiana. IntPar's Mem. Sup. Mot. Dismiss, at 2-3. 22-23, *Eng'g & Inspection Servs., LLC v. Intpar, LLC*, No. 13:0801 (filed June 10, 2013), ECF No. 18-1.

3

- the recipient would be sued if it did not respond within two weeks (¶¶ 31, 41-42).

The letters demanded a substantial payment, between $900 and $1200 *per employee*. The letters described this sum as a "fair price for a license negotiated in good faith," based on the responses of "many" other companies (¶ 23). In fact, the complaint alleges that only a tiny fraction of the businesses that received these letters have purchased licenses, and the average "license" price received by MPHJ for the patents was lower than $900 per employee (¶¶ 23, 39).

In light of MPHJ's unfair and deceptive acts, as described in the complaint, MPHJ sent these letters in bad faith (¶ 54).

The State filed its complaint in Washington Superior Court on May 8, 2013 (Doc. 6). MPHJ was served on May 20, 2013 (Doc. 7). MPHJ removed the case to federal court on June 7, 2013 (Doc. 1). The notice of removal asserts both federal question and diversity jurisdiction. *Id.*

## ARGUMENT

The State's case is brought under state consumer protection law, not federal patent law, and it belongs in state court. As the removing party, MPHJ "bears the burden of showing that federal jurisdiction exists." *Hand v. Chrysler Corp.*, 997 F. Supp. 553, 555 (D. Vt. 1998); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (same). It cannot meet that burden here. This is not a case that "'originally could have been filed in federal court.'" *MyInfoGuard, LLC v. Sorrell*, 2012 WL 5469913, *3 (D. Vt. Nov. 9, 2012) (quoting *Marcus v. AT & T Corp.*, 138

F.3d 46, 51 (2d Cir. 1998)). The State's complaint does not dispute the validity or scope of MPHJ's patents, or assert any other claim under federal patent law. "[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quotation omitted). Given that demanding standard, MPHJ cannot show that federal court jurisdiction extends to this state-law consumer fraud case.

MPHJ asserts both federal question and diversity jurisdiction. It is wrong on both counts. As explained in Part I, while federal jurisdiction over patent law is broad, it is not unlimited. State courts may hear cases that involve patent-law issues, so long as the plaintiff does not assert a claim that arises under patent law or necessarily depends on the resolution of a substantial question of federal patent law. Part II explains why this case falls outside federal patent jurisdiction. It is the State's claims that control the analysis of federal jurisdiction, and the State's claims do not require the state court to decide any substantial patent-law issues. Finally, Part III rebuts MPHJ's assertion of diversity jurisdiction. The State of Vermont is the real party in interest and is not a citizen for diversity purposes, and that defeats diversity jurisdiction.

## I.   Federal question jurisdiction is limited to complaints that arise under the patent laws or require the court to necessarily determine a substantial question of patent law.

The fact that a complaint mentions patents or touches on patent law is not enough to establish federal question jurisdiction. In fact, the standard is much more demanding: the well-pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends

on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quotation omitted). "The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478 (1912). MPHJ cannot show that either test for jurisdiction is met here. Before turning to those arguments, however, some background on patent jurisdiction may be useful.

To begin with, to the extent federal patent jurisdiction exists, it is exclusive. The United States district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . [and] [n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). A holding that federal patent jurisdiction exists over a claim means that no state court may entertain it. That patent jurisdiction is exclusive, however, does not reduce the jurisdictional requirements. A defendant's burden to justify removal is the same. The Court must remand if the defendant cannot show that the plaintiff's claim for relief "arises under" the patent law.

One way a defendant may make this showing is by establishing that "federal patent law creates the cause of action." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted."). As the Supreme Court explained almost a hundred years ago,

6

"[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).

The direct federal cause of action, while a typical avenue for federal jurisdiction, is not the exclusive standard. In *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983), the Supreme Court observed that the *American Well* standard is "more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction." *Id*. at 9.[2] A claim may also "arise under" patent law, even where patent law does not create the cause of action, if the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 809. Thus, "even where a claim finds its origins in state rather than federal law . . . [the Supreme Court has] identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn*, 133 S. Ct. at 1064.

*Gunn* sets forth a multi-part test for this type of "arising under" jurisdiction, explaining that "federal jurisdiction over a state law claim will lie if a federal issue

_____

[2] In *Trevino v. Sw. Bell Telephone Co., L.P.*, 2005 WL 2346950 (S.D. Tex. Sept. 26, 2005), the district court mistakenly states that *American Well* was overruled by *Franchise Tax Board. See Trevino*, 2005 WL 2346950, at *2. *Franchise Tax Board* clarified the jurisdictional description in *American Well*, but did not overrule its holding. *See Gunn*, 133 S. Ct. at 1064 (citing *American Well* for the proposition that "[m]ost directly, a case arises under federal law when federal law creates the cause of action asserted").

is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. *Gunn* and other precedent provide guidance on what showing is necessary to meet each element of the test.

**Necessarily Raised.** Whether a patent law question is necessarily raised depends solely on the allegations in the plaintiff's complaint. "Under the well-pleaded complaint rule, as appropriately adapted to § 1338(a), whether a claim 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's [complaint], unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Christianson*, 486 U.S. at 809 (quoting *Franchise Tax Bd.*, 463 U.S. at 10).

*Gunn* illustrates how a patent law question may be "necessarily raised" by a state law claim. The *Gunn* plaintiff sued his attorney for malpractice in a prior patent case. To prevail on his state-law tort claim, the plaintiff had to show that, had his attorney litigated the patent case differently, the outcome would have been different. As the Supreme Court put it in *Gunn*, the plaintiff's malpractice claim required a "case within a case" analysis of an issue of patent law. 133 S. Ct. at 1065.

As this example shows, a federal court will sometimes have jurisdiction over a state-law claim – but only if an issue of federal law is necessarily raised by an element of the plaintiff's claim. "[A]s long as there is at least one alternative theory supporting the claim that does not rely on patent law, there is no 'arising under' jurisdiction under 28 U.S.C. § 1338." *In re DDAVP Direct Purchaser Antitrust Litig.*,

585 F.3d 677, 685 (2d Cir. 2009) (quotation omitted). Moreover, potential federal

defenses are irrelevant. "A defense that raises a federal question is inadequate to

confer federal jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804,

808 (1986); *see also Nanomedicon, LLC v. Research Found. of New York*, 784 F.

Supp. 2d 153, 157 (E.D.N.Y. 2011) ("Nor is federal jurisdiction created by reliance

on a federal defense, or federal claims set forth in the removal petition.").

   ***Disputed.*** If a federal patent law issue has already been resolved, including

through disposition in a separate federal case, then the federal issue "is no longer

disputed." *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277, 1284

(Fed. Cir. 2010); *see also Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer

& Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) (finding the question of patent

infringement was disputed when there was no concession by defendant relating to

infringement).

   ***Substantial.*** *Gunn* explains that "it is not enough that the federal issue be

significant to the particular parties in the immediate suit . . . [but] [t]he

substantiality inquiry . . . looks instead to the importance of the issue to the federal

system as a whole." 133 S. Ct. at 1066. There, the Supreme Court held that the

patent issue raised by the plaintiff's malpractice claim was not substantial.

Although "state legal malpractice claims based on underlying patent matters . . .

may necessarily raise disputed questions of patent law," malpractice cases "are by

their nature unlikely to have the sort of significance for the federal system

necessary to establish jurisdiction." *Id.* at 1065. The Federal Circuit has interpreted

this substantiality requirement to turn on whether the issue, if decided by the state courts "could result in inconsistent judgments between state and federal courts." *Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013) (explaining in dicta that "permitting state courts to adjudicate disparagement cases (involving alleged false statements about U.S. patent rights) could result in inconsistent judgments between state and federal courts").

**Federal-State Balance.** *Gunn* also addressed the balance between state and federal interests. The Court explained that, in certain instances, state courts may analyze a question of federal patent law in order to resolve state law claims, and "[i]n answering that question, state courts can be expected to hew closely to the pertinent federal precedents." *Gunn*, 133 S. Ct. at 1067. And state courts may exercise jurisdiction even over some cases involving novel questions of patent law. Novel questions "may arise for the first time in a state court 'case within a case'" without undermining the consistency of federal patent law because "[i]f the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests." *Id.* As the Court concluded, "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its roots in a misunderstanding of patent law." *Id.* at 1068.

*Gunn* confirms that, except in a "special and small" set of cases, 133 S. Ct. at 1064, state courts may exercise jurisdiction over state-law claims that relate to

patents. As explained below, MPHJ cannot meet its burden of showing that the
State's consumer fraud claim falls within the exclusive jurisdiction of the federal
courts.

## II.    The State's consumer protection complaint does not arise under federal patent law.

Neither standard for federal patent jurisdiction is met here. The State has
not pleaded a patent cause of action. And no element of the State's claim necessarily
raises a disputed and substantial issue of federal patent law. *See Gunn*, 133 S. Ct.
at 1064.

## A.    The State has pled only a state-law cause of action and any potential federal defense is irrelevant.

The State's sole claim is that MPHJ engaged in unfair and deceptive acts and
practices in commerce in violation of the Vermont Consumer Protection Act, 9
V.S.A. § 2453(a). The State's claim has nothing to do with the validity or scope of
MPHJ's patents. Whatever the status of the patents, the letters sent by MPHJ were
not a good faith attempt to enforce these patents. The letters were, instead, an
attempt, through the use of unfair and deceptive acts, to cause small businesses and
non-profits to pay MPHJ money, under the guise of an attempt to enforce patents.

The complaint alleges several different grounds for finding a violation of the
Consumer Protection Act (Doc. 6, ¶¶ 56-57). None of these theories underlying the
State's claim for relief require the court to evaluate the validity of MPHJ's patents.
Neither the State's claim nor the legal theories supporting the claim challenge the
validity of the patents. *See Doukas v. Ballard*, 825 F. Supp. 2d 377, 382 (E.D.N.Y.
2011) (remanding when "none of the relief sought implicates the validity of the

patent. . . . Plaintiff does not seek invalidation of the patent or any relief that would impact the validity of the patent").

Likewise, the complaint does not assert patent infringement or otherwise require a state court to engage in claim construction to determine the scope and meaning of MPHJ's patents. Indeed, the State's claim does not consider or depend upon the infringement or non-infringement of the patents by the letter recipients. *See Burlington Indus., Inc. v. Solutia, Inc.*, 310 F. App'x 594, 595 (4th Cir. 2009) (concluding that the district court lacked jurisdiction when the "complaint asserted claims based on breach of the Consent Decree/License Agreement, rather than on infringement of [Plaintiff's] patents").

MPHJ may assert federal patent law as a defense to the State's claim. The Federal Circuit has held that "federal patent law preempts state-law tort liability for a patent-holder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). *Globetrotter* thus holds that "[s]tate-law claims . . . can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Id.* "Accordingly, to avoid preemption, 'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.'" (quoting *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed Cir. 1999))). In the State's view, this defense is not available to MPHJ, not least because the letters contain false and misleading statements (Compl., Doc 6, ¶ 57).

12

Whether the State is right or wrong on this point is, however, irrelevant, because the possibility of federal preemption does not confer federal court jurisdiction. "'[F]ederal pre-emption is ordinarily . . . a defense to the plaintiff's suit,' and '[a]s a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.'" *Forrester*, 2013 WL 2097348, at *5 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Of course, the State cannot defeat removal by "omitting to plead necessary federal questions in a complaint, or framing an essentially federal case in terms of state law." *Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F. Supp. 2d 315, 317 (D. Vt. 1999). But that is not the case here. There may be federal claims that the State or other parties could assert against MPHJ. The State, however, has chosen only to assert a state-law claim, as it is free to do. *See, e.g., Marcus*, 138 F.3d at 52 ("Under the well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available.").

The rule that a patent law defense cannot confer jurisdiction on the district courts is longstanding, and was aptly described in *American Well*. There, the plaintiff alleged "that the defendants have falsely and maliciously libeled and slandered the plaintiff's title to [its product.]" 241 U.S. at 258. The Supreme Court acknowledged that, if defendant's statement about plaintiff's product "is a statement of fact, it may be justified, absolutely or with qualifications, by proof that the statement is true. But all such justifications are defenses, and raise issues that

are no part of the plaintiff's case." *Id.* at 259. The Court explained that "[a] suit for damages to business caused by a threat to sue under the patent law is not itself a suit under the patent law." *Id.*[3] Here, as in *American Well*, federal patent law is not raised by any element of the State's claims.

MPHJ may say that this case is really about patent enforcement. What the State has alleged, however, is consumer fraud, and nothing more. Sending consumers deceptive and misleading letters that demand the payment of money violates state law – and that remains true even if the letters mention patents. The letters are unfair and deceptive because they wrongly suggest that many other businesses have purchased expensive licenses, they deceive the recipient as to the party entitled to enforce the patents, and they include threats of costly litigation that MPHJ was not prepared or likely to carry out. MPHJ's unfair and deceptive acts are unrelated to whether the letter recipients were, in fact, infringing the patents. MPHJ may, if it chooses, litigate federal preemption as a defense in state

---

[3] As noted above, *supra* n. 2, cases after *American Well* clarified that "arising under" jurisdiction may exist when an element of the plaintiff's claim necessarily raises a substantial federal question. *See Gunn*, 133 S. Ct. 1065; *Grable*, 545 U.S. at 314. These later cases do not alter the requirement that the federal question must arise out of the well-pleaded complaint, not an anticipated or potential defense. "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331." *Chicago Tribune Co. v. Bd. Of Trustees of the Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012); *see also Urata v. Canare Elec. Co. Ltd.*, 2013 WL 2395049, at *7 (D.N.J. May 29, 2013) ("Nothing in either *Grable* or *Gunn* suggests that the Supreme Court intended to overturn its well established case law that an affirmative defense does not give rise to federal-question jurisdiction.").

14

court. But it cannot point to the possibility of preemption as a basis for removal. The State's claim is grounded in state law, not patent law.

**B.     The complaint does not require a court to necessarily resolve a substantial or significant issue of federal patent law.**

Because the State's complaint alleges a state, not federal, claim, MPHJ can justify removal only by showing that the requirements set forth in *Gunn* are met here. It cannot do so. First, no federal patent law issues are necessarily raised and actually disputed because the state court can decide the case, based on the elements of the State's claim, without any consideration of federal patent law. Second, even if a state court looked to some questions of federal patent law in deciding this case, those potential federal questions are neither substantial nor would they have a significant impact on the federal system. Any consideration of patent law in this case would be limited to these particular facts and circumstances and a state-court decision would not bind the federal courts.

**1.     The State's claims are supported by many alternative theories, the majority of which are unrelated to patent law.**

None of the State's allegations require determination by a court that MPHJ's patents were invalid, or that they were infringed. In fact, the majority of the State's theories for finding a violation of the Consumer Protection Act are based solely on the expressly deceptive statements set forth in the letters – statements that are entirely unrelated to the validity or scope of MPHJ's patents. While there may be a basis for challenging the validity of the patents and the scope of the patents described in the letters, the State chose not to pursue such theories, so the court should not consider them for the purpose of deciding jurisdiction. *See ClearPlay,*

*Inc. v. Abecassis*, 602 F.3d 1364, 1369 (Fed. Cir. 2010) ("While it may be true, in a holistic sense, that the dispute between these parties is patent-based, the Supreme Court's decision in *Christianson* embraces a distinctly non-holistic approach to 'arising under' jurisdiction. It is not enough that patent law issues are in the air. Instead, resolution of a patent law issue must be necessary to every theory of relief under at least one claim in the plaintiff's complaint."); *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363 (Fed. Cir. 2006) (finding that plaintiff's claims for breach of contract did not "arise under" patent law, the court explained that, "should it come to pass that the court, in deciding whether the contract conditions were met, deems it appropriate to apply the law of patent infringement, that of itself does not change the complaint into one arising under the patent law"); *Nanomedicon*, 784 F. Supp. 2d at 157 ("[E]ven if a complaint can be construed to set forth both federal and state causes of action, it is the plaintiff's prerogative to pursue only his state claim, and removal is not proper.").

As the Supreme Court has explained, "the well-pleaded complaint rule . . . focuses on claims, not theories, and just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire . . . claim 'arises under' patent law." *Christianson*, 486 U.S. at 811 (citations omitted). If at least one theory offered in support of the State's claim does not require resolution of a federal patent question, federal question jurisdiction does not exist. *See id.* at 810 ("Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential .

16

. . a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to *each* of those theories" (emphasis supplied)); *see also Discovision Assocs. v. Fuji Photo Film Co., Ltd.*, 2007 WL 5161825, *6 (S.D.N.Y. Oct. 29, 2007) (remanding because "at least one arguable theory exists to support Plaintiff's claim that does not rely on resolution of a federal patent question").

In similar cases, district courts have held that a complaint does not necessarily raise a disputed federal patent law issue so long as one theory that supports the plaintiff's claimed relief can proceed without an evaluation of patent law. For example, a federal court in Kansas found no federal question jurisdiction over a plaintiff's unfair competition claim. *See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1053 (D. Kan. 1999). One theory of the claim was based on defendant's instigation of patent litigation against plaintiff for the sole purpose of inhibiting competition. *Id.* The court remanded the case because the "[p]laintiffs' right to relief does not 'necessarily depend[] on resolution of a substantial question of federal law,' and federal law is not 'a necessary element of one of the well-pleaded . . . claims[.]'" *Id.* The court explained that the claims did not depend on the patents' validity and that the plaintiffs alleged other grounds for finding unfair competition:

> Plaintiffs' claims do not depend on whether the . . . patents are valid;
> they allege only that [defendants] had an impure heart when it filed
> suit. Moreover, regardless [of] whether the . . . patent is valid,
> plaintiffs allege that defendants committed other acts of unfair
> competition[.] . . . Any discussion of patent law is merely tangential to
> plaintiffs' claim that [defendants] had an ill motive which resulted in

unfair competition. While federal law may be implicated in an examination of [defendants'] motives, it is hardly a substantial or necessary part of plaintiff's claim.

*Id.*

Similarly, in *In Re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819 (E.D. Mich. 1999), plaintiffs alleged state-law claims arising from defendant's instigation of patent litigation for the sole purpose of delaying and preventing competition. The federal court found no federal jurisdiction.

Here, the State has alleged numerous grounds for finding that MPHJ's letters violated the Consumer Protection Act that are entirely separate from any claims the letters make about MPHJ's patents. Therefore, the State's "alternate theories make it unnecessary to resolve any substantial question of patent law for [it] to prevail." *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 675 (S.D.N.Y. 2000).

**2.     To the extent a court might address questions of patent law in deciding this case, those patent-law issues are neither substantial nor significant to the federal system.**

Again, the complaint alleges that MPHJ's letters constituted unfair and deceptive acts and practices in commerce and thus violated state – not federal – law. Nothing in the State's complaint calls on a court to determine the patents' validity or whether the patents were in fact infringed. A state court may, nonetheless, be informed by well-established patent law in considering a small number of the alternate theories put forth by the State. Specifically, established patent law standards may have some relevance to MPHJ's lack of investigation into

the letter recipient's possible infringement of the patents[4] and to the representations (in the draft complaints sent to letter recipients) that the shell companies have standing to file an infringement action.[5] The possible relevance of patent law to these theories of liability is not enough to create federal jurisdiction, for two reasons. First, as explained in Part II.B.1, above, federal jurisdiction does not exist where patent law has relevance only to some alternate theories of liability. The fact that some of the State's theories are unrelated to patent law is, by itself, enough to defeat jurisdiction. Second, any evaluation of patent law would be narrowly limited to the facts of this case and would not result in conflicting state and federal precedent.

Any consideration of patent law here would be tangential, limited to the facts of this case, and would draw on well-established principles of federal patent law. That is, at most a court would consider and apply established federal standards to these specific facts and parties. Interpreting *Gunn*, the Federal Circuit has explained that jurisdiction does not arise when "any such collateral estoppel effect 'would be limited to the parties and patents that had been before the state court,' and that '[s]uch fact-bound and situation-specific effects are not sufficient to

---

[4] "In the context of patent infringement actions, [the Federal Circuit has] interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

[5] "Under long-standing prudential standing precedent, an exclusive licensee with less than all substantial rights in a patent, such as a field-of-use licensee, lacks standing to sue for infringement without joining the patent owner." *A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010).

establish federal arising under jurisdiction.'" *Forrester*, 2013 WL 2097348, at *5 (quoting *Gunn*, 133 S. Ct. at 1067-68).

Supreme Court precedent confirms that this kind of limited, fact-bound application of federal law does not transform a case into one that *arises under* federal law. In *Empire*, the Court held that arising under jurisdiction did not exist in an insurance subrogation case that it described as "fact-bound and situation-specific." *Empire*, 547 U.S. at 701. While the Court acknowledged that a federal issue may arise, it concluded that "[t]he state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant." *Id.* In so holding, the Court distinguished *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), where the Court had found federal jurisdiction because federal tax law supplied a necessary element of the plaintiff's claim. *"Grable* presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases." *Empire*, 547 U.S. at 700 (quotation omitted). Here, as in *Empire*, the court will have no opportunity to decide a pure issue of federal law that could govern numerous cases. The consideration of patent law, if any, will be bound by the specific facts and circumstances of this case, and will not be substantial.

Lastly, as in *Gunn*, even if the state court elects to resolve some questions of patent law, its decision would not affect the balance of federal and state judicial responsibilities. Any decision of the state court "will not stand as binding precedent for any future patent claim; it will not even affect the validity of [Defendant's]

20

patent[s]." *Gunn* 133 S Ct. at 1068. "Despite the federal interest in the development of a uniform body of patent law, most questions of patent law [such as validity and scope of patents] would continue to be decided by the federal judiciary and state court rulings on patent issues would not bind the federal courts." *Urata v. Canare Elec. Co. Ltd.*, 2013 WL 2395049, at *8 (D.N.J. May 29, 2013). Here, any issues of patent law will be limited to the specific context of the State's claim that MPHJ violated the Consumer Protection Act. A state court might, for example, consider whether MPJH misled recipients of the letters by representing that the shell companies would file lawsuits, when in fact the shell companies lack standing to pursue such claims under established federal law. That type of decision, applying settled law to the facts of these particular licensing agreements, would have little precedential effect and would not govern any future effort by MPJH to enforce its patents in federal court.

## III.   The State as a party destroys diversity jurisdiction.

MPHJ also asserts diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1, at 1-2.) This alternate ground for removal fails because the presence of the State as a party – and the real party in interest – destroys diversity.

Diversity jurisdiction under § 1332(a) requires "complete diversity." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). That is, each defendant must be "a citizen of a different state from *each* plaintiff." *Id.* A state, however, is not a "citizen" for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). Indeed, this Court recently reaffirmed this

longstanding principle in a state consumer fraud action that was remanded to state court. *See MyInfoGuard v. Sorrell*, 2012 WL 5469913, at *4 (D. Vt. Nov. 9, 2012) ("[T]he state argues, correctly, that it is not a citizen for the purpose of diversity jurisdiction."); *see also Krisel v. Duran,* 386 F.2d 179, 181 (2d Cir. 1967) ("state is not (itself) a citizen and a suit between a state and a citizen . . . of another state is not between citizens of different states" (alteration in original) (quotation omitted)); 15 James Wm. Moore, et al., *Moore's Federal Practice*, ¶ 102.57[7] (3d ed. 2013) ("states are never subject to diversity jurisdiction because a state is not considered a citizen for this purpose" (footnotes omitted)). Because this case is not a suit "between . . . citizens of different states," 28 U.S.C. § 1332(a), it must be remanded.

MPHJ suggests that "the action actually is a suit by the Attorney General on behalf of certain Vermont businesses which, upon information and belief, are citizens of the State of Vermont and their citizenship must be considered in determining diversity jurisdiction" (Doc. 1, ¶ 6). Not so. So long as the State "is the real party in interest," *Krisel,* 386 F.2d at 181, the parties are not diverse. The real party in interest is decided by looking at the "essential nature and effect of the proceeding." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 218 (2d Cir. 2013) (same). The State brought this action on its own behalf, not "on behalf of" private businesses, and seeks relief that serves the interest of the State and the public. (Compl., Doc. 6, at 10) (seeking, among other relief, statewide injunction and civil

penalties). Indeed, the State seeks relief that individual consumers cannot obtain. *See* 9 V.S.A. § 2461; *MyInfoGuard*, 2012 WL 5469913, at *5 (recognizing that consumers cannot obtain civil penalties under Consumer Protection Act). This is a state enforcement action, and the State is the real party in interest.

Indeed, the Court's reasoning in *MyInfoGuard* applies with equal force to this case. "The fact that the State seeks civil penalties and a statewide injunction . . . – remedies unavailable to consumers – leaves no doubt that the State has concrete interests in the litigation; put simply, the benefits of those remedies flow to the State as a whole." *MyInfoGuard*, 2012 WL 5469913, at *5. Although the State also seeks restitution for injured consumers, that does not change the fact that the State is litigating this case on its own behalf, to assert and defend its own interests. In *MyInfoGuard*, the State also sought restitution for victims, and the Court correctly reasoned that the request for restitution "d[id] not undermine the State's broader interest in its case." *Id.*[6] Other courts have likewise held that, even though a state

---

[6] The State's request for restitution has even less relevance in this case than in *MyInfoGuard*. The defendant in *MyInfoGuard* asserted jurisdiction under the "class action" and "mass action" provisions of 28 U.S.C. § 1332(d). Where other requirements are met, the class action provision requires only minimal diversity, not complete diversity. *See Purdue Pharma*, 704 F.3d at 213. The Court accordingly looked to case law interpreting § 1332(d) and adopted the "wholesale approach" employed by the majority of circuits to decide "whether a State is a real party in interest in a *parens patriae* action." *MyInfoGuard*, 2012 WL 5469913 at *4; *see also Purdue Pharma*, 704 F.3d at 219 (describing "whole-complaint approach" as "majority rule"). Here, MPJH relies on § 1332(a), not § 1332(d), and must establish *complete* diversity. Even if both the State and the victimized businesses are considered real parties in interest, the State's role is sufficient to destroy complete diversity. *See Maine v. Data General Corp.*, 697 F. Supp. 23, 25-26 (D. Me. 1988) (no

enforcement action may benefit individuals, the state is the real party in interest. *See, e.g., Maine v. Data General Corp.*, 697 F. Supp. 23, 25-26 (D. Me. 1988) (state was a real party in interest to employment discrimination case brought by human rights commission, although individual employee would benefit and also had interest); *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 998 (S.D. W. Va. 2012) (state was real party in interest in consumer protection case brought by Attorney General, although some relief would benefit individual victims).

---

jurisdiction where both state and employee were real parties in interest in employment discrimination case).

24

## CONCLUSION

MPHJ has not and cannot meet its burden of establishing federal jurisdiction. This case is about consumer fraud, not patent law, and the State's presence as a party destroys diversity. As the Second Circuit recently acknowledged, the removal statute is "narrowly construed" in part because of "the importance of preserving the independence of state governments." *Purdue Pharma*, 704 F.3d at 213 (quotation omitted). Consistent with that principle, the State is entitled to pursue its state-law enforcement action in state court.

Accordingly, the State respectfully requests that its motion be granted and the case remanded to Washington Superior Court.

Dated:  July 8, 2013

<div style="margin-left:40%">

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:     /s/ *Bridget C. Asay*
Bridget C. Asay
Ryan Kriger
Naomi Sheffield
Assistant Attorneys General
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Tel.  (802) 828-5500
basay@atg.state.vt.us
rkriger@atg.state.vt.us
nsheffield@atg.state.us

</div>

25