# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| STATE OF VERMONT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:13-cv-00170-wks |
| ) | |
| MPHJ TECHNOLOGY ) | |
| INVESTMENTS, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## STATE OF VERMONT'S OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

WILLIAM H. SORRELL
ATTORNEY GENERAL

Bridget C. Asay
Ryan Kriger
Naomi Sheffield
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
Tel. (802) 828-5500
basay@atg.state.vt.us
rkriger@atg.state.vt.us
nsheffield@state.vt.us
*Attorneys for Plaintiff State of Vermont*

# TABLE OF CONTENTS

INTRODUCTION ............................................... 1

MEMORANDUM OF LAW ............................... 1

I.    A Vermont court would find personal jurisdiction because MPHJ's
      deliberate and widespread contacts with Vermont are sufficient
      "minimum contacts" for purposes of the Due Process Clause ................. 2

II.   MPHJ is not immune from personal jurisdiction for its unfair and
      deceptive acts merely because its letters asserted patent
      infringement ........................................... 12

      A.   Federal Circuit precedent does not govern a state-law consumer
           protection claim like this one ........................... 12

      B.   The cases cited by MPHJ are readily distinguishable, because the
           State alleges extensive contacts and unfair and deceptive conduct 17

      C.   Personal jurisdiction is appropriate because MPHJ engaged in its
           principal business activity in Vermont ........................... 20

III.  At a minimum, jurisdictional discovery is justified and should take
      place in state court ........................................ 23

CONCLUSION................................................ 25

## INTRODUCTION

MPHJ engaged in concerted, widespread commercial activity in Vermont. It targeted scores of Vermont businesses with letters that threatened litigation and demanded the payment of money. The State alleges that these letters were false and misleading and that MPHJ's conduct violated state consumer protection law. MPHJ now claims that, notwithstanding its actions in Vermont and its repeated threats to file lawsuits in Vermont, no Vermont court can exercise personal jurisdiction over it. Indeed, MPHJ says that allowing this case to go forward would be unfair. To the contrary, it would truly be unfair to allow MPHJ to engage in these unfair and deceptive campaigns in Vermont, all the while avoiding any potential liability. The conduct described in the State's complaint is not just the basis for the State's consumer protection claim – it is MPHJ's primary business activity. MPHJ chose to conduct that business in Vermont, and it is subject to the jurisdiction of Vermont courts. MPHJ's motion should be denied.

## MEMORANDUM OF LAW

The scope of this Court's personal jurisdiction is generally determined by Vermont law. *See, e.g., Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). And here, given that the State filed suit in state court to enforce Vermont's Consumer Protection Act, 9 V.S.A. §§ 2451 *et seq.*, the key question is whether a Vermont court would exercise personal jurisdiction over MPHJ in this case. *Cf. Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996) (considering, in removed state-law case, whether "New York court" would exercise personal jurisdiction over

1

defendants). Vermont's long-arm statute, 12 V.S.A. § 913(b), extends personal jurisdiction "to the outer limits permitted by the due process clause." *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 41, 572 A.2d 1382, 1385-86 (1990) (quotation omitted). MPHJ's conduct brings it well within those "outer limits." The Court should deny MPHJ's motion because (1) a Vermont court would hold that MPHJ's deliberate and widespread contacts with Vermont are sufficient "minimum contacts" for purposes of the Due Process Clause; (2) the federal patent cases cited by MPHJ are neither relevant nor factually analogous; and (3) at a minimum, jurisdictional discovery is appropriate and should be conducted in state court.

## I.     A Vermont court would find personal jurisdiction because MPHJ's deliberate and widespread contacts with Vermont are sufficient "minimum contacts" for purposes of the Due Process Clause.

Vermont law reflects a "clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause." *Id.* at 40, 572 A.2d at 1385. Relevant decisions of the Vermont Supreme Court and this Court confirm MPHJ is subject to the jurisdiction of Vermont courts.

For purposes of the Due Process Clause, the "critical consideration is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 41 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). There are two types of personal jurisdiction. General jurisdiction is "based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."

2

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Alternatively, for specific jurisdiction, the "reasonableness requirement is met when

a defendant purposefully directs his or her activities towards residents of the forum

State and the litigation that results arises from those activities." *Reed*, 154 Vt. at

41, 572 A.2d at 1386. Contacts that are merely "fortuitous, attenuated or random"

are insufficient to give rise to jurisdiction. *Id.* at 42, 572 A.2d at 1386.

If a defendant has "purposefully established minimum contacts within the

forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quotation

omitted), a court must then decide whether exercising personal jurisdiction is

"reasonable" and not contrary to traditional notions of fair play and substantial

justice. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113

(1987). The factors relevant to this latter inquiry include the burden on the

defendant, the interests of the forum state – here, Vermont – and the plaintiff's

interest in obtaining relief. *Id.* A court should also evaluate "the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and the

shared interest of the several States in furthering fundamental substantive social

policies." *Id.* (quotation omitted).

Here, there is no question that MPHJ "purposefully directed" its activities

toward Vermont in a manner that is sufficient for specific personal jurisdiction. The

State is not suing over a single letter or a random interaction with a Vermont

3

business.[1] MPHJ's communications and financial solicitations in Vermont were deliberate, repeated, and widespread. MPHJ contacted scores of Vermont businesses with letters that solicited the payment of money for licenses and threatened litigation. Several of the Vermont businesses had further correspondence with MPHJ. *See infra* 24. The Vermont Supreme Court and this Court have found personal jurisdiction where a defendant's contacts were far less substantial than these. *See, e.g., Sollinger v. Nasco*, 655 F. Supp. 1385, 1388 (D. Vt. 1987) (finding personal jurisdiction where defendant sent catalogs into Vermont and entered into a single transaction that was not fulfilled); *Revision Military, Inc. v. Balboa Mfg. Co.*, 2011 WL 3875624, at *9 (D. Vt. Aug. 31, 2011) (asserting jurisdiction over California company that "does not have any real property, employees, sales staff, or offices in Vermont. It is not registered to do business in Vermont, has no registered agent to accept service within the state, and does not advertise in Vermont-based publications"), *vacated in part on other grounds by Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524 (Fed. Cir. 2012); *Dall v. Kaylor*, 163 Vt. 274, 275, 658 A.2d 78, 79 (1995) (finding personal jurisdiction where defendants advertised in nationally circulated publication and entered into

---

[1] MPHJ suggests at one point that the State's claim "rests on the sending of three patent licensing inquiry letters." Doc. 16, at 8. In fact, the State alleges that MPHJ sent one or more letters to "many" and "numerous" Vermont businesses. Compl., Doc. 6, ¶¶ 1, 14. The State knows of 75 businesses targeted by MPHJ in Vermont. MPHJ also repeatedly notes its lack of a physical presence in Vermont. Doc. 16, at 3, 8 n.6. But "[p]hysical presence in the forum state . . . is not required." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012).

transaction with single Vermont resident); *Brown v. Cal Dykstra Equip. Co.*, 169 Vt. 636, 740 A.2d 793, 795 (1999) (similar).

Decisions from other states confirm that the facts alleged – directing false or misleading commercial communications into Vermont – are more than enough to establish personal jurisdiction over MPHJ for purposes of the State's claim. A Maryland court found personal jurisdiction in a direct-mail case, explaining that state law "prohibit[s] the communication to Maryland residents of false or misleading statements and inducements. If such statements or inducements are sent to Maryland residents, offensive conduct has occurred within our borders, even if the communication originated in another State." *Consumer Prot. Div. v. Outdoor World*, 603 A.2d 1376, 1382 (Md. Ct. App. 1991); *see also, e.g., State by Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 720 (Minn. Ct. Spec. App. 1997) ("Advertising contacts justify the exercise of personal jurisdiction where unlawful or misleading advertisements are the basis of the plaintiff's claims."), *aff'd by State v. Humphrey v. Granite Gate Resorts, Inc.*, 576 N.W.2d 747 (Minn. 1998); *State v. Reader's Digest Ass'n*, 501 P.2d 290, 302 (Wash. 1972) (finding personal jurisdiction based on defendant's mailing of sweepstakes entries into state; holding that "the performance of an unfair trade practice in this state by a foreign corporation which has no agents, employees, offices or other property in the state is a sufficient contact to establish jurisdiction"), *modified on other grounds by Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986); *Credit Counseling Found., Inc. v. Hylkema*, 958 So.2d 1059, 1061 (Fla. Dist. Ct. App. 2007) (sending

5

nine unsolicited commercial emails into jurisdiction sufficient to establish personal jurisdiction); *State ex rel. Nixon v. Telco Directory Pub.*, 863 S.W.2d 596, 598 (Mo. 1993) (reaffirming that state may properly exercise personal jurisdiction and may regulate unfair and deceptive merchandising practices when relevant matters are sent through the mails).

MPHJ mistakenly relies on *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002), as holding that soliciting business in a forum is "insufficient to confer personal jurisdiction." Doc. 16, at 9. What *Hildebrand* in fact held was that the "mere solicitation of business" did not meet the definition of transacting business for purposes of the Ohio long-arm statute. 279 F.3d at 1354. Ohio's statute is narrower than Vermont's and "does *not* grant Ohio courts jurisdiction to the limits of the due process clause of the fourteenth amendment." *Id.* (emphasis added). *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) likewise does not support MPHJ's position. The Second Circuit in *Marvel* construed a specific provision of New York's long-arm statute and did not apply the minimum contacts test that governs here. *Id.* at 128-30. The purposeful solicitation of business within a state is sufficient under the Due Process Clause, at least with respect to a claim that the solicitations themselves violated state law. *See State by Humphrey v. Granite Gate Resorts, Inc.*, 1996 WL 767431, at *10 (Minn. Dist. Ct. Dec. 11, 1996) ("In matters of consumer protection, courts routinely hold that out of state defendants soliciting in-state residents have purposely availed themselves of the privilege of conducting business within the State."), *aff'd by State by Humphrey*, 568

6

N.W.2d 715; *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.*, 456 N.W.2d 371, 377 (Iowa 1990) (nonresident defendants' "acts in advertising within this state are sufficient . . . to render them amenable to suit here in an action which seeks to halt that advertising on the ground that it is unlawful").

The fact that MPHJ repeatedly threatened to sue businesses in Vermont strongly supports a finding that MPHJ purposefully directed its commercial activities into this State. MPHJ's letters expressly threatened litigation and targeted businesses received a draft complaint. Compl., Doc. 6, ¶¶ 30-32 & Ex. C (sample draft complaint). The draft complaint recites that jurisdiction is proper because the "defendant" – that is, the targeted business – does business "in this District." *Id.* MPHJ was threatening these Vermont businesses with lawsuits in Vermont, not in the Western District of Texas. *Cf.* Doc. 22, at 16 (MPHJ's assertion that it is subject to personal jurisdiction in the Western District of Texas and in the District of Delaware). Surely a party that threatens dozens of lawsuits in a jurisdiction "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

The second requirement for minimum contacts is also met, because the State's claim arises directly out of MPHJ's activities in Vermont. The State's allegations, as set forth in the Complaint, are directed at the content of the letters sent by MPHJ and the manner in which they were sent. MPHJ wrongly claims that the "type of dispute" has no bearing on personal jurisdiction. Doc. 22, at 8. This is not so. The fact that the State's claim is a direct response to the specific activities

that MPHJ conducted in Vermont is part of the due process inquiry and fully

supports the State's position here. The State alleges that MPHJ targeted numerous

Vermont businesses with commercial communications that were false, misleading,

and unfair. That allegation – that MPHJ committed an unfair or deceptive act in

commerce in Vermont – is sufficient to make out a prima facie showing that

Vermont courts have personal jurisdiction over MPHJ. *See, e.g., Reader's Digest*,

501 P.2d at 302; *Outdoor World*, 603 A.2d at 1382.

Because MPHJ's contacts with Vermont are sufficient to establish minimum

contacts, the remaining inquiry is whether exercising personal jurisdiction is

reasonable and consistent with principles of "fair play" and "substantial justice."

*Burger King*, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed

his activities at forum residents seeks to defeat jurisdiction, he must present a

compelling case that the presence of some other considerations would render

jurisdiction unreasonable."). The factors relevant to that inquiry overwhelmingly

favor the exercise of jurisdiction:

- MPHJ's repeated threats to file dozens of lawsuits in Vermont support the

reasonableness and fairness of litigating this case here. *See ActiveVideo Networks,

Inc. v. Trans Video Elecs., Ltd.*, 2013 WL 5442360, at *13 (N.D. Cal. Sept. 30, 2013)

(finding that defendant's argument that litigating in the forum would be

burdensome "rings hollow given its extensive history of enforcement litigation in

this District"); *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430

(Fed. Cir. 1996) (noting that defendants "have initiated a suit seeking to enforce the

8

same patent that is the subject of this suit against other parties" in the forum as evidence that litigation in the forum would not be unduly burdensome).

- The interest of the forum state, Vermont, in having this claim litigated by a Vermont court is particularly strong, because this is an action brought in the public interest to enforce state law. *See Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*, 2013 WL 5477165, at *5 (D. Colo. Sept. 30, 2013) ("Colorado has an important interest in providing a forum for Colorado residents and businesses to seek redress for injuries caused by out-of-state actors."); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 479 (S.D.N.Y. 2001) ("The United States has a substantial interest in the enforcement of its securities laws and the protection of investors in United States securities markets."). *Cf. Metro. Life*, 84 F.3d at 574 (finding dispute implicated no interest of Vermont when acts giving rise to the suit occurred in other states and plaintiff was neither incorporated in nor had its principal place of business in Vermont).

- The plaintiff's interest in obtaining relief is a key factor. This is not a commercial dispute between private parties that could readily be litigated in a different state.[2] The State should not be blocked from pursuing its enforcement action in Vermont. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1097 (10th Cir. 1998) (finding that this factor, the plaintiff's interest, "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing

---

[2] MPHJ suggests that the State could file its lawsuit in the Western District of Texas or the District of Delaware. Those federal courts do not have subject-matter jurisdiction over Vermont's state-law claim.

9

him to litigate in [] another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit"); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1341 (Fed. Cir. 2008) ("In application of Due Process and fairness, all factors must be considered, including the availability of alternative fora . . . .") (Newman, J., dissenting).

- Any burden on MPHJ is minimal. MPHJ is not a traditional business rooted in a specific location. It has a post office box in Delaware and works with a law firm in Texas. It conducts "business" all over the country, by sending letters in the names of its many alphabet-soup shell companies – and it has conducted that business here. There is no greater cost to MPHJ in litigating this case in Vermont than anywhere else. *See Metro. Life*, 84 F.3d at 574 (recognizing potential inconvenience of nonresident corporation litigating in Vermont, court nonetheless acknowledged that "conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago" and thus "taken alone, it falls short of overcoming the plaintiff's threshold showing of minimum contacts").

- The "shared interests of the several States in furthering fundamental substantive social policies," *Worldwide Volkswagon*, 444 U.S. at 292, support Vermont's effort to enforce state laws that protect consumers and deter unfair and deceptive commercial conduct.

MPHJ's filings do not even discuss, much less dispute, the analysis that a Vermont court would apply in evaluating minimum contacts for purposes of a claim

under the State's consumer protection law.[3] Instead, MPHJ adheres to its one-note argument: the letters sent into Vermont alleged patent infringement, and, in MPHJ's view, the use of those magic words eliminates personal jurisdiction. Following MPHJ's logic, this is the case no matter how many letters were sent, what was demanded, or how many false statements the letters might contain. It would not matter, for example, if the letters falsely claimed that "100 Vermont businesses have already purchased licenses for $2000 each. If you don't do the same, we will sue you in three days and you will lose thousands more defending our suit." Likewise, it would not matter if MPHJ picked its targets by choosing names at random from a telephone book, without any inquiry at all. And it would not matter whether MPHJ targeted 50 or 500 or 5000 Vermonters.

That cannot be right. And it is not right. As explained below, the patent cases that MPHJ relies on do not sweep as broadly as MPHJ claims and do not support dismissal.

---

[3] The State is not arguing, as MPHJ suggests, that a Vermont state court would be "constitutionally defiant." Doc. 23, at 5. A Vermont court would apply state law and the federal due process principles (as set forth by the Vermont Supreme Court and U.S. Supreme Court) that govern personal jurisdiction over non-resident defendants for purposes of state-law claims. A Vermont state court would not be bound by Federal Circuit precedent that governs patent infringement disputes, because by definition a case pending in state court would not "arise under" federal patent law. *See* Vermont's Memorandum in Support of Motion to Remand, Doc. 9-1, at 16-26. Contrary to MPHJ's position, the Federal Circuit has not – and, indeed, cannot – create binding precedent that governs the analysis of personal jurisdiction for non-patent cases in state courts.

## II.    MPHJ is not immune from personal jurisdiction for its unfair and deceptive acts merely because its letters asserted patent infringement.

An assertion of patent infringement is not a talismanic shield against personal jurisdiction. Under Federal Circuit precedent, a patent holder is not subject to personal jurisdiction in an action filed by a potential infringer seeking a declaration of non-infringement, merely because the patent holder sent letters into the forum asserting possible infringement. *Avocent*, 552 F.3d at 1333. The Federal Circuit has not, however addressed any case remotely like this one, where the State (not a private party) has brought an enforcement action alleging that a patent holder has engaged in a widespread pattern of unfair and deceptive conduct that violates state law. The Federal Circuit precedent cited by MPHJ does not call for dismissal of the State's case, for at least three reasons. First, this is *not* a patent infringement dispute and the nature of the State's claim bears directly on the requirements of due process. Second, the cases cited by MPHJ are readily distinguishable. Among other things, not one of those cases holds that a patent holder should be free from liability if its notice letters are false and deceptive in violation of state law. Last, finding personal jurisdiction is fair and reasonable because MPHJ engaged in its principal business activity in Vermont.

## A.    Federal Circuit precedent does not govern a state-law consumer protection claim like this one.

MPHJ relies on Federal Circuit cases that address patent infringement disputes. In the lead case relied on by MPHJ, *Avocent*, the Federal Circuit described the action as "a suit for declaratory judgment of non-infringement and invalidity of

12

two U.S. patents." 552 F.3d at 1326. Notwithstanding MPHJ's efforts to rewrite the State's complaint, see Doc. 18, at 23, that is not this case. The State alleges a violation of state consumer protection law, and does not seek a ruling on the validity or scope of the patents. Contrary to MPHJ's suggestion that the "type of dispute" is irrelevant, the Federal Circuit has acknowledged that different law applies to different claims in considering personal jurisdiction. In a case in which the plaintiff asserted state-law claims and also sought a declaratory judgment relating to patent invalidity, the Federal Circuit explained that "Federal Circuit law applies to the patent claim and Ninth Circuit law applies to the state law claims." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *see also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999) ("Our mandate to achieve uniformity in patent law does not demand that we apply our personal jurisdiction rules to state law claims where no legitimate patent issue exists."). The Federal Circuit took this same approach in *Avocent*, focusing on the nature of the claim: a suit for declaratory judgment of non-infringement. *See* 522 F.3d at 1332-34. The same personal jurisdiction analysis applied to the plaintiff's federal Lanham Act claim, because the question of infringement was a "critical factor" in that claim too. *Id.* at 1340. With respect to the state-law claim for unfair competition, the Federal Circuit affirmed the dismissal of that claim for lack of supplemental jurisdiction under 28 USC § 1367. *Id.* at 1340-41.

The other two Federal Circuit cases cited by MPHJ are similar. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) (potential

patent infringer sought declaratory judgment of non-infringement and invalidity); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1197, 1202 (Fed. Cir. 2003) (dispute between competing manufacturers that included request for declaratory judgment of invalidity); *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995) ("[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."). In *Red Wing*, which predates *Avocent*, the Federal Circuit similarly highlighted the nature of the dispute between the parties: a declaratory judgment action "to clear the air of infringement charges." *Red Wing*, 148 F.3d at 1360.

MPHJ has drawn the court's attention to the recent decision in *Eng'g & Inspection Servs., LLC v. IntPar, LLC*, No. 13-0801, 2013 WL 5589737 (E.D. La. Oct. 10, 2013), describing it as "a ringing endorsement of MPHJ's position[.]" Doc. 23, at 2. MPHJ emphasizes that the complaint in *IntPar* addressed the same letters that MPHJ sent to businesses across Vermont. The crucial distinction, however, is the difference between the claims: the *IntPar* plaintiff sought declaratory judgments of invalidity and non-infringement of the patents. 2013 WL 5589737, at *2. The plaintiff also asserted a violation of state unfair competition laws, but "patent infringement" was a "significant factor" for that claim as well. *Id.* at *3; *see also* Doc. 23B, at 18, 20 (discussing the "erroneous claims of patent scope" and alleging that defendant threatened the plaintiff "with baseless allegations of patent infringement while knowing that the Klein patents do not encompass the subject

14

matter that Defendants purport"). The *IntPar* court applied Federal Circuit patent law on personal jurisdiction because the plaintiff asserted patent claims. *IntPar*, 2013 WL 5589737, at *3.

MPHJ wrongly claims that *IntPar* addressed "the same state unfair competition allegations," Doc. 23, at 3, as in this case. The State has not even asserted an unfair competition claim – its claim is for unfair and deceptive acts and practices, not antitrust violations. *Cf.* Doc. 23B, at 17-20 (antitrust claims in *IntPar*). In any event, the plaintiff's state-law claims in *IntPar* were directly related to the substance of the patents. The State's allegations, in contrast, are not directed to the scope or validity of MPHJ's patents. And the State has not – unlike the *IntPar* plaintiff – alleged that MPHJ provided "misleading descriptions of the scope of the patents." *IntPar*, 2013 WL 5589737, at *5. Federal Circuit precedent that governs patent claims does not apply to the State's claim here. *See Coyle*, 340 F.3d at 1348 ("Our prior decisions make clear that where the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law.").

MPHJ wrenches the holdings of *IntPar* and the Federal Circuit cases it cites out of context in an effort to create a broad rule of immunity from personal jurisdiction for patent holders. The Federal Circuit's decisions on this issue reflect its understanding that patent holders may at times need to properly inform competitors of possible infringement, and that doing so should not automatically allow the potential infringer to control the choice of forum in litigation over the

15

patent. *See Red Wing*, 148 F.3d at 1360-61 ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."). In patent disputes between competing manufacturers those concerns are real and play a role in the fairness analysis. But none of these decisions suggest that the same reasoning controls a state-law claim like this one, which is unrelated to patent infringement or validity. To the contrary, in both *Silent Drive* and *Avocent*, the Federal Circuit dismissed state-law claims on grounds other than personal jurisdiction. *Silent Drive,* 326 F.3d at 1203 (finding a lack of subject matter jurisdiction without addressing personal jurisdiction); *Avocent,* 553 F.3d at 1340-41 (noting lack of supplemental jurisdiction over state-law claim).

Moreover, the Federal Circuit's reasoning does not support the broad and unvarying rule that MPHJ advocates. The Federal Circuit has not questioned that cease-and-desist letters satisfy the basic requirements for due process even in patent cases: they are purposefully directed at the forum and directly related to a dispute over patent validity and infringement. *Avocent,* 552 F.3d at 1333 (acknowledging that "the [patent enforcement] letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters." (quoting *Silent Drive*, 326 F.3d at 1202)). Its refusal to find personal jurisdiction in these cases rests solely on principles of fair play and substantial justice. *Red Wing*, 148 F.3d at 1361 ("[C]ease-and-desist letters alone do not suffice to justify personal jurisdiction. Specifically, such letters cannot satisfy the second prong of the Due

16

Process inquiry."). Indeed, the Federal Circuit has "repeatedly held that the sending of infringement letters would satisfy the minimum contacts requirement of due process except for policy considerations unique to the patent context." *Silent Drive*, 326 F.3d at 1206; *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (addressing the instances where minimum contacts exist, but due process requires jurisdiction be denied, "these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum").

The relevant policy considerations and principles of fair play vary, at times sharply, with context. It may be unfair to force a patent holder to litigate patent validity in a distant forum merely because the patent holder sent a proper cease-and-desist letter to an allegedly infringing competitor in that state. That hardly means, however, that it is unfair to find personal jurisdiction over a non-practicing entity that sends scores of letters into a particular state – letters alleged to be unfair and deceptive in violation of state law. As the State has explained, *supra* 8-10, here principles of fair play and substantial justice strongly support allowing this case to proceed. Federal Circuit precedent does not require otherwise.

**B.    The cases cited by MPHJ are distinguishable, because the State alleges extensive contacts and unfair and deceptive conduct**.

Even if the Federal Circuit's due process analysis were controlling here – and it is not, as explained above – the cases that MPHJ relies on are easily

17

distinguished. There are at least two crucial differences that mandate a finding of personal jurisdiction here.

First, the State alleges that MPHJ's letters were unfair and deceptive. As explained above, *supra* 3-8, a state may assert personal jurisdiction over a business that engages in false and deceptive advertising or other commercial communications within the state. Courts have likewise recognized that "bad faith enforcement of patent rights" can supply a basis for personal jurisdiction. *See OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1228 (D. Colo. 2000) (finding eight demand letters and over fifty telephone calls made "in an effort to enforce license agreements were not protected patent enforcement activities" and could form a basis for personal jurisdiction because "[p]laintiffs have made a threshold showing of bad faith"). Patent holders are not free, in the guise of enforcing their patent rights, to make false statements and engage in unfair and deceptive conduct. *Id*. at 1228 (patentee's right to enforce patents "is not without limits"; patentee must act in good faith); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (Fed. Cir. 1998) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights.").

Second, the scope of MPHJ's contacts in Vermont far exceeds the conduct that the Federal Circuit found insufficient in *Red Wing*, 148 F.3d at 1357 (relying on three enforcement letters warning of infringement and seeking to license) and

*Avocent*, 522 F.3d at1327 (defendant's enforcement efforts were reflected in three letters). This is not a case about a single cease-and-desist letter or even a handful of letters. MPHJ's allegedly unfair and deceptive communications were sent to scores of businesses in Vermont.

Even in the context of patent infringement suits, patent enforcement letters are not irrelevant to the question of personal jurisdiction. *See, e.g., Silent Drive*, 326 F.3d at 1202. The Federal Circuit has merely held that something "more" is needed to support a finding of personal jurisdiction. *Red Wing*, 148 F.3d at 1360; *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363-64 (Fed. Cir. 2006) (addressing "other activities" combined with cease-and-desist letters that support personal jurisdiction). Here, the State's allegations are not limited to the fact that MPHJ sent letters to a substantial number of Vermont businesses. The State has also alleged that the letters – far from being "proper" notices of patent rights, *Red Wing*, 148 F.3d at 1361 – were unfair and deceptive. Put another way, the State alleges that MPHJ has employed unfair and deceptive tactics to solicit financial gains from Vermont consumers. Considered together, MPHJ's widespread pattern of contacts with Vermont and the State's claim that MPHJ's conduct was unfair and deceptive are sufficient to hold that personal jurisdiction comports with the requirements of fair play and substantial justice.[4]

---

[4] The Louisiana district court in *IntPar* declined to allow discovery on the number of Louisiana businesses contacted by MPHJ's shell companies, reasoning that the frequency or number of contacts would not affect the due process analysis. The court's analysis on this point is unpersuasive and should not be followed. The court mistakenly cites *Hildebrand*,

**C.    Personal jurisdiction is appropriate because MPHJ engaged in its principal business activity in Vermont.**

As explained above, the Federal Circuit's personal jurisdiction holdings are grounded in the last prong of the due process test: principles of fair play and substantial justice. *See Red Wing*, 148 F.3d at 1360-61. In the context of infringement disputes, the court has reasoned that a patent holder should have "latitude" to inform others of its patent rights, and should not, as a matter of fairness, "subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Id.* These concerns have little relevance to a defendant like MPHJ: a non-practicing entity that has no operational function except for indiscriminately sending letters alleging patent infringement, threatening litigation, and offering a license in lieu of such expensive litigation. *See* Doc. 18, at 15; Compl., Doc. 6, ¶¶ 17, 31.

MPHJ insists that it does not do business in Vermont, asserting, for example, that it has no property, facilities, employees, or "inventory" here. Doc. 16, at 3. None

---

279 F.3d at 1356, as holding broadly that "an accumulation of the patentee's contacts with the forum do not create a constitutionally adequate basis for personal jurisdiction." *IntPar*, 2013 WL 5589737, at *96. The quoted language in *Hildebrand*, however, refers only to "[t]he accumulation" of that particular patentee's contacts with the forum state, which included contacting two manufacturers regarding licensing; sending a small number of cease and desist letters, some with a sample of the patented product; and isolated phone calls. 279 F.3d at 1353, 1356. The Federal Circuit has not addressed a case in which a patent holder targeted scores of businesses within a single state. Moreover, a holding that the frequency or number of contacts in a forum state is irrelevant to personal jurisdiction cannot be reconciled with Supreme Court precedent. *See, e.g., Burger King*, 471 U.S. at 477 (defendant who "purposefully has directed his activities at forum residents . . . must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

20

of those things, of course, are necessary for a finding of specific personal

jurisdiction. *See, e.g.*, *Campbell Pet Co. v. Miale*, 542 F.3d 879, 882, 886 (Fed. Cir.

2008) (finding personal jurisdiction appropriate even though "defendants have no

office or sales representative in Washington, are not registered in Washington, and

pay no taxes in Washington"). In any event, MPHJ's understanding of "doing

business" is unduly cramped. MPHJ does not dispute that its "sole function is to

manage, enforce and license its patents." *Ivoclar Vivadent Inc. v. Hasel*, No. 02–cv–

0316E(F), 2003 WL 21730520, at *4 (W.D.N.Y. June 30, 2003).[5] *See* Doc. 18, at 15.

Like the defendant in *Ivoclar*, MPHJ has none of the usual indicia of doing business

because it does not produce or sell any products or engage in other commercial

activities. *See Ivoclar*, 2003 WL 21730520, at *4. MPHJ's primary – if not sole –

business activity is sending letters like the ones attached to the State's complaint.

That is the business MPHJ has conducted in Vermont. *See id.* (finding personal

jurisdiction even though defendant "has no offices, employees, assets or telephone

listings in New York" because "it has extensively engaged in its primary business

activity – to wit, enforcing and licensing its patents – in New York"); *see also*

*Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y.

1992) ("In this unusual situation, where a substantial part of ORC's business is

---

[5] *Ivoclar* considered whether a non-practicing entity was subject to personal jurisdiction of
the New York courts under the general jurisdiction provision of New York's long-arm
statute, CPLR § 301. 2003 WL 21730520, at *4. The court found "defendants' other
activities in not only protecting its patents but soliciting licensing fees in New York, when
combined with their two 'cease and desist' letters, evince the requisite permanence – i.e.,
systemic and continuous activity – to satisfy New York's 'doing business' test." *Id.*

21

protecting its patents, ORC's contacts with New York to protect such patents are sufficient to constitute 'doing business[.]'").

MPHJ is nothing like a manufacturer of a product or other operational business, rooted in a particular jurisdiction, whose only contact with a "distant forum" is a proper notice of possible infringement sent to a competitor. *Avocent*, 552 F.3d at 1327 (explaining that plaintiff and defendant "compete in the manufacture and sale of keyboard-video-mouse switches"). The Federal Circuit in *Red Wing* did address the status of a corporation whose "sole business is licensing and enforcing the rights associated with two patents."148 F.3d at 1357. Even there, however, the Federal Circuit did not grapple with facts like these, where a non-practicing entity has targeted hundreds or thousands of businesses across the country. Compl., Doc. 6, at 3 ¶ 15. The Supreme Court has expressly rejected "any talismanic jurisdictional formulas" and emphasized that "the facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice.'" *Burger King*, 471 U.S. at 485-86 (quotation omitted; alteration in original). MPHJ purposefully brought its business model to Vermont, by targeting scores of businesses with repeated communications in an effort to extract licensing fees. MPHJ conducted the only business in which it is engaged in Vermont. Fair play and substantial justice do not justify allowing a person actively engaged in its sole business within a state to escape personal jurisdiction simply because its business is soliciting payments for patent licenses and threatening patent infringement litigation.

\* \* \*

The Due Process Clause protects non-resident defendants from jurisdictional over-reach. A state court's exercise of jurisdiction must comport with basic principles of fairness and reasonableness. Here, there is nothing unfair about requiring MPHJ to defend its conduct in Vermont in a Vermont court. The State alleges that MPHJ conducted in Vermont the only kind of business activity that it conducts anywhere: sending letters to numerous Vermont businesses and nonprofits, letters the State claims were unfair and deceptive. The State's claim does not arise under patent law or bear any significant relation to the scope or validity of MPHJ's patents. This is neither the type of claim that is governed by Federal Circuit patent law, nor the type of activity the Federal Circuit has sought to protect.

## III.    At a minimum, jurisdictional discovery is justified and should take place in state court.

In the State's view, the allegations in the complaint are sufficient to make out a prima facie showing of personal jurisdiction. If the Court disagrees, however, the State should have the opportunity to conduct discovery to elucidate and confirm the scope of MPHJ's contacts with Vermont. *Cf. Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 580 (1999) (noting that district court permitted jurisdictional discovery); *Cantor*, 88 F.3d at 154-55 (same)*; Casella Waste Sys., Inc. v. G R Tech., Inc.*, 2008 WL 148996 at \*1 (D. Vt. 2008) (questions of personal jurisdiction can be "factually intensive").

23

MPHJ argues that the State already has all of the information it could need to determine jurisdiction. This is not the case. First, MPHJ may have engaged in additional activity in Vermont after responding to the State's civil investigative demands ("CIDs") in early April and before the State filed suit in May. MPHJ states that "[p]lainly it has not," Doc. 22, at 20, but MPHJ's letters (1) seek both responses and licenses from Vermont businesses, *see* Doc. 6-1, at 4, 6 & 18-8 at 2, and (2) say that MPHJ plans to target additional businesses. *See* Doc. 6-1, at 5. Moreover, MPHJ received correspondence from several Vermont businesses and nonprofits. Although most of these letters sought a reply from MPHJ, with one exception MPHJ did not produce replies to those businesses. Given these facts, further contacts with Vermont businesses would be reasonable and expected. The State should not be foreclosed from discovering that information.

Second, MPHJ failed to provide or inaccurately provided information relevant to jurisdiction in its response to the State's CIDs. The State requested a list of all persons with an ownership interest in MPHJ, to which MPHJ responded by naming MPHJ's manager. At no point did MPHJ clarify the answer regarding its owners. The State also asked for the names of those individuals acting on behalf of MPHJ's subsidiaries for the purpose of communicating with persons in Vermont. The short list of employees listed in response did not include a person who signed a number of letters and signed at least one piece of correspondence as MPHJ's manager. Lastly, in the CID responses, MPHJ refused to provide the State with any information about their process for identifying Vermont businesses and selecting businesses to

24

target with the letters. This information that the State sought, and MPHJ refused to provide, would allow the State to identify the real parties in interest and could well show that MPHJ's contacts in Vermont were even more extensive than alleged in the complaint.

Although the State has, as required at this stage, pled a prima facie case for personal jurisdiction, further discovery would identify the real parties in interest and confirm the extent and nature of MPHJ's contacts in Vermont. This Court should not, however, direct the parties to engage in potentially time-consuming discovery before deciding whether the Court has subject-matter jurisdiction over this case. As the State has previously argued, *see* Doc. 20, the Court should address the State's motion to remand before reaching the complicated and fact-intensive question of personal jurisdiction. If, as the State contends, this case belongs in state court, any discovery needed to address jurisdiction should be conducted there.

## CONCLUSION

For the reasons given, if the Court addresses MPHJ's motion to dismiss for lack of personal jurisdiction, the motion should be denied, given MPHJ's alleged campaign of soliciting payments from Vermont businesses using unfair and deceptive tactics. As argued in the State's other filings, however, it remains the State's position that the Court should (1) address subject-matter jurisdiction first, Doc. 20; and (2) grant the State's motion to remand, Doc. 9, and remand this case to state court without reaching the issue of personal jurisdiction.

Dated: October 17, 2013

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By: */s/ Bridget C. Asay*
 Bridget C. Asay
 Ryan Kriger
 Naomi Sheffield
 Assistant Attorneys General
 Vermont Attorney General's Office
 109 State Street
 Montpelier, VT 05609
 Tel. (802) 828-5500
 basay@atg.state.vt.us
 rkriger@atg.state.vt.us
 nsheffield@atg.state.us

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to Andrew D. Manitsky, Esq.


Dated: October 17, 2013

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:     */s/ Naomi Sheffield*
Naomi Sheffield
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-6906
nsheffield@atg.state.vt.us

Counsel for Plaintiff

27