# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| STATE OF VERMONT | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
|      v. | ) Civil Action No. 2:13-cv-00170-wks |
| | ) |
| MPHJ TECHNOLOGY | ) |
| INVESTMENTS, LLC, | ) |
| | ) |
|      Defendant. | ) |

_____

# REPLY IN SUPPORT OF MOTION TO REMAND

WILLIAM H. SORRELL
ATTORNEY GENERAL

Bridget C. Asay
Ryan Kriger
Naomi Sheffield
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
Tel. (802) 828-5500
basay@atg.state.vt.us
rkriger@atg.state.vt.us
nsheffield@state.vt.us
*Attorneys for Plaintiff State of Vermont*

**CONTENTS**

AUTHORITIES....................................................................................................ii

INTRODUCTION  ............................................................................................. 1

ARGUMENT .................................................................................................... 3

I.      Potential defenses, including preemption, cannot form the basis for
        federal question jurisdiction .................................................................. 4

II.     None of the *Gunn* factors support federal jurisdiction over this state-
        law consumer protection claim ........................................................... 8

        A.      The State's sole claim is that MPHJ engaged in unfair and
                deceptive acts and practices..................................................... 9

        B.      The federal issues presented by MPHJ are not substantial................. 13

        C.      The federal-state balance favors state-court adjudication .................. 14

III.    The relief sought by the State is sought to remedy MPHJ's violations of
        the CPA ........................................................................................... 16

CONCLUSION.............................................................................................. 18

i

# AUTHORITIES

## Cases

*Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004) ........................................................ 6

*Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1 (2003) ................................................. 7

*Bonita Boats v. Thunder Craft Boats,* 489 U.S. 141 (1989) ...................................... 15

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ................. 8, 12, 13, 16

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ................... 5, 9, 10

*Excelstor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 2007 WL 3145013
    (N.D. Ill. Oct. 24, 2007) ........................................................................................ 5

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S.
    627 (1999) ........................................................................................................... 15

*Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust for S.
    Cal.*, 463 U.S. 1 (1983) ....................................................................................... 15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308
    (2005) .............................................................................................................. 7, 12

*Greenwich Fin. Srvs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin.
    Corp.*, 603 F.3d 23 (2d Cir. 2010) ........................................................................ 8

*Gunn v. Minton*, 133 S. Ct. 1059 (2013) ........................................... 4, 9, 13, 14, 15, 16

*Holiday Matinee, Inc. v. Rambus, Inc.*, 118 Cal. App. 4th 1413 (Cal. Ct. App.
    2004) ...................................................................................................................... 7

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009) ........... 10

*In re Lehman Bros. Sec. and Erisa Litig.*, 2012 WL 983561 (S.D.N.Y. Mar.
    22, 2012) .............................................................................................................. 12

*In re Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 2d 326 (E.D.N.Y.
    2002) ............................................................................................................... 15, 16

*Jordan v. Nissan N. Am.*, 176 Vt. 465 (Vt. 2004) ....................................................... 11

*MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833 (11th Cir. 2013) ................................................................................ 13, 14, 15

*New York v. Shinnecock Indian Nation*, 686 F.3d 133 (2d Cir. 2012) ......................... 5

*People of N.Y. ex rel. Cuomo v. First Am. Corp.*, 2008 WL 2676618 (S.D.N.Y. July 8, 2008) ............................................................................ 12, 13

*Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964) ........................................... 15

*State v. R.J. Reynolds Tobacco Co.*, S1087-05 CnC, 96 (Vt. Super. Ct. Mar. 10, 2010).................................................................................... 11

*State ex rel. Sanborn v. Koscot Interplanetary Inc.*, 512 P.2d 416 (Kan. 1973)......... 17

*State v. Shattuck*, 747 A.2d 174 (Me. 2000) ............................................................... 17

*Thompson v. Microsoft Corp.*, 471 F.3d 1288 (Fed. Cir. 2006).................................... 5

*United States v. Locke*, 529 U.S. 89 (2000) ................................................................. 6

**Statutes**

15 U.S.C. § 45(a) ....................................................................................................... 11

9 V.S.A. § 2453 ............................................................................................................. 1

9 V.S.A. § 2453(b)....................................................................................................... 11

**Miscellaneous**

John B. Oakley, *Federal Jurisdiction and the Problem of the Litigative Unit: When Does What "Arise Under" Federal Law?*, 76 Tex. L. Rev. 1829 (June 1998) ............................................................................................... 10

## INTRODUCTION

The State's claim in this case is directed not at MPHJ's patents but at its conduct. The State alleges that MPHJ violated Vermont's consumer protection act, 9 V.S.A. § 2453, *et seq.* ("CPA") by sending unfair and deceptive letters to Vermont businesses and nonprofits. *See* Compl., Doc. 6, at ¶¶ 56, 57. The State has not alleged any violation of federal law and the State can prove its claim under state law without relying on federal patent law.

This is, in short, a state-law case. MPHJ emphasizes that its letters asserted patent infringement. True. But the patents are not relevant to the State's claim. MPHJ's letters could have been seeking payments in exchange for cloud computing services, identify theft protection, or even magazine subscriptions – what matters for purposes of the CPA is that MPHJ's communications were unfair and deceptive. The State seeks to prove that MPHJ failed to conform to the standard of conduct required by state law. This Court has no jurisdiction over that state-law claim.

Before responding to MPHJ's legal arguments, some factual corrections are warranted. MPHJ defends its conduct as "entirely lawful," Def.'s Opp'n to State's Mot. Remand, Doc. 18, at 15, but in doing so, it disregards key allegations in the complaint. For example:

- MPHJ says that it "wished only to be so informed" if a targeted business was not infringing the patents. *Id.* at 13. In fact, the targeted companies were asked to provide burdensome, private information: user manuals, IP addresses, a year of daily activity logs, and server information. *See* Letters, Doc. 6-1, at 4.

1

- MPHJ states that "[t]he third letter was sent only to recipients who did not respond to the first letter and the second letter." Doc. 18, at 14. The State alleges that many of the targets did not receive the first two letters prior to receiving the third, which included a draft complaint. *See* Compl., Doc. 6, at ¶ 29.

- MPHJ asserts that the third letter "made clear" that, in the absence of a response, "the sender . . . *would believe it had a basis to bring suit*." Doc. 18, at 14 (emphasis added). As the State alleges, the third letter actually states "if we do not hear from you within two weeks . . . our client will be forced to file a Complaint against you for patent infringement in Federal District Court where it will pursue all of the remedies and royalties to which it is entitled" and "we must hear from you within two weeks of the date of this letter" because "litigation will ensue otherwise." Letters, Doc. 6-1, at 6 (emphasis in original).

- MPHJ disputes the State's allegation that the use of 40 shell corporations hid the owner of the patent and helped encourage quick settlements. *See* Compl., Doc. 6, at ¶ 56(g). MPHJ's claim that the subsidiaries helped "organize [MPHJ's] licensing efforts[,]" Doc. 18, at 12, is implausible. The subsidiaries were wholly owned by MPHJ and appear to have the same employees. Moreover, many subsidiaries sent threatening letters to businesses for which they did not have the right to license the patents. The confusing welter of shell companies caused mistakes in the "licensing" effort; they did not help "organize" it.

- MPHJ claims that the "first letter was . . . consistent with a lawful and appropriate licensing campaign, as it provided to the recipient, a likely infringer,

proper notice of the patents and offered a license." Doc. 18, at 13. This assertion, like similar statements throughout MPHJ's briefing, disregards the State's allegations that MPHJ had no basis to believe that the recipient was "a likely infringer," *see* Compl., Doc. 6, at ¶ 35, and MPHJ repeatedly misstated or mischaracterized assertions in the letter to induce the recipient to pay for a license. *Id.* at ¶¶ 34, 37, 38, 39, 42, 43, 44, 49, 50, 51.

Along with downplaying the State's serious factual allegations, MPHJ speculates about the State's supposed motivation and even suggests that this enforcement action was "orchestrated" by private companies. Doc. 18, at 15, n.12. Setting aside MPHJ's inaccurate assertions,[1] motive is, in any case, irrelevant. What is relevant is whether the State's claim arises under federal law. It does not. For the reasons set forth below, the Court should grant the Motion to Remand.

## ARGUMENT

MPHJ's arguments blur two distinct and crucial concepts: whether a claim *arises under* federal law or a claim is potentially *preempted by* federal law. Preemption is a defense to state law claims. Defenses, even federal defenses, do not create federal jurisdiction. For this Court to find jurisdiction, MPHJ must show that

---

[1] MPHJ quotes the Vermont Attorney General as saying "[i]f Vermont succeeds in scaring trolls away, it will give companies there an advantage[,]" Doc. 18, at 16, and again stating "Vermont is trying to attract new businesses to the state, and that scaring off trolls might help." *Id.* at 38. Review of the cited article shows that neither statement was made by the Attorney General. *See* Doc. 18-10, at 4. Similarly, MPHJ cites a Washington Post article as stating that the Attorney General "has made it clear he is actively seeking to have other State[]s assert similar claims against disfavored classes of patent owners." Doc. 18, at 36, n.35. The Vermont Attorney General was not interviewed for the article, which did state that "the *Nebraska* attorney general[] says he has been evangelizing the idea to his peers in other states[.]" Doc. 18-9, at 4 (emphasis added).

the State's complaint necessarily raises a federal issue and that the other parts of the *Gunn* test are satisfied. *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013); State's Mot. Remand, Doc. 9-1, at 12-15. As explained in Part I, MPHJ's numerous references to potential "federal issues," the role of the federal patent system, and the supposed rights of patent holders would be relevant, if at all, to preemption. MPHJ may argue in state court that the State's claim is preempted in part by federal law (a point the State, of course, disputes). But a possible defense of preemption is irrelevant to jurisdiction.

As set forth in Parts II and III, moreover, MPHJ's effort to show that the State's consumer protection claim arises under federal law is unconvincing and based on an impermissible re-writing of the State's complaint. The State asserts a single claim: MPHJ violated the CPA by engaging in unfair and deceptive acts in commerce. MPHJ cannot unilaterally transform that single claim into "multiple" claims. Nor can MPHJ insert an issue – the validity and scope of the patents – that the State has not raised and in fact has expressly disavowed. Because the State's claim arises under state, not federal, law, the motion should be granted.

## I.   Potential defenses, including preemption, cannot form the basis for federal question jurisdiction.

MPHJ suggests that "federal issues abound" in this case, Doc. 18, at 23, but without exception, the issues identified would arise, if at all, if MPHJ asserts preemption as a defense. A potential defense cannot supply a basis for removal. The Court must look to the claims set forth in the complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant

may interpose." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (quotation omitted). The Second Circuit recently reinforced this point, explaining, "It is not enough that the complaint anticipates a potential federal defense. And this is true even if the parties concede that the defense is the only disputed issue in the case." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (citations omitted).

The State asserts that it is unfair and deceptive, in violation of the CPA, to send misleading and inaccurate letters to Vermont businesses and to threaten litigation without any basis to believe such businesses may be infringing a patent. MPHJ responds that its letters are supposedly allowed or required by federal law. That argument sounds in preemption. It has nothing to do with what the State must prove to show that MPHJ's conduct violated the CPA. Whatever the merits of MPHJ's preemption argument, it cannot justify removal. *See Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1292 (Fed. Cir. 2006) ("Microsoft's defense on [patent] preemption grounds does not provide this court with jurisdiction over the appeal."); *Excelstor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 2007 WL 3145013, at *6 (N.D. Ill. Oct. 24, 2007) (holding that possible defense of preemption by federal patent law could be raised in state court but was not basis for federal jurisdiction).

MPHJ mistakenly suggests that a federal issue is necessarily raised by the allegations directed at MPHJ's lack of investigation and basis for suspecting infringement. For example, MPHJ's first letter told targeted businesses that "you likely have an infringing system," Letters, Doc. 6-1, 1, provided an example of an

infringing system and said it is "one your company likely uses," *id.* at 2, and explained "[o]ur research . . . has led us to the conclusion that an overwhelming majority of companies like yours utilize systems that are set up to practice at least one of [the exemplary infringing scenarios.]" *Id.* at 3. To prove its allegations, the State could show that MPHJ had no information about the companies targeted, their IT systems, or the likelihood the companies were infringing MPHJ's patents. That is a straightforward factual inquiry unrelated to the patents or federal patent law.

The federal issues that MPHJ identifies – that the letters were somehow required by federal law, or that the State would have to establish "how much evidence was needed to be considered sufficient under federal law to send the letters," Doc. 18, at 22, might be relevant to a defense of preemption. Indeed, asserting that federal law requires an action that is prohibited by state law is a typical framing of conflict preemption. *See, e.g., United States v. Locke*, 529 U.S. 89, 109 (2000) ("conflict pre-emption . . . occurs when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" (quotation omitted)). The State disputes that its claims are preempted, but regardless, because preemption is a defense, it is irrelevant to federal jurisdiction. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("In particular, the existence of a federal defense normally does not create statutory 'arising under'

jurisdiction."). What matters is that the State can prove that MPHJ's conduct was unfair and deceptive without addressing any issue of federal law.

Essentially, MPHJ uses the phrase "necessarily raised" far too loosely,[2] to apply to issues the state court will likely have to address, as opposed to those necessarily raised by the State's claim. Even if preemption is obvious – which is certainly not the case here – the fact does not change the jurisdictional analysis. The Supreme Court observed in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) that even where a federal statute would "unquestionably" provide "a complete federal defense," that defense "would not justify removal." *Id*. at 9.[3] If MPHJ believes that some of its conduct is protected by federal law, it must litigate that issue as a defense in state court.

The same analysis applies to the other allegations that MPHJ points to as supposedly raising federal issues. *See* Doc. 18, at 23. Proving each of these allegations requires the State to prove that certain statements were untrue and

---

[2] MPHJ's imprecise and inaccurate understanding of "necessarily raised" is confirmed by its suggestion that the number of references to patents in the complaint is relevant to jurisdiction. MPHJ cites *Holiday Matinee, Inc. v. Rambus, Inc.*, 118 Cal. App. 4th 1413, 1425 (Cal. Ct. App. 2004), for the proposition that 63 references to "patent" or derivations thereof suggested that the claims may raise a federal patent law issue. Federal jurisdiction cannot be reduced to a word-counting exercise. MPHJ's letters were about patents, and the State's complaint describes the letters. But mere reference to patents does not immunize MPHJ, and does not give rise to federal jurisdiction. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (explaining that the Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law").

[3] The Court in *Anderson* ultimately found removal appropriate on the basis of complete preemption, explaining that, because the statute provides "the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim for usury against a national bank." 539 U.S. at 11.

certain actions were unfair,[4] but does not require the State to invoke federal law or address the validity of the patents. The federal issues to which MPHJ alludes are potential defenses, nothing more.[5]

Because MPHJ has identified only possible defenses, but no federal issues that are "necessarily raised" by the State's claims, it has failed to meet its burden of establishing this Court's jurisdiction. *See Greenwich Fin. Srvs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010) ("The party opposing remand generally bears the burden of showing that federal jurisdiction is proper."). For this reason alone, the case should be remanded, and the Court need not address MPHJ's unrestrained re-write of the State's complaint. However, as explained below, MPHJ's effort to recast the State's single state-law claim into multiple federal claims similarly fails.

## II.   None of the *Gunn* factors support federal jurisdiction over this state-law consumer protection claim.

The State's consumer protection claim does not 'necessarily raise' any federal patent law issue. MPHJ strives to avoid this conclusion not only by improperly

---

[4] For example, the letters asserted that the shell company *will* sue the target if it did not receive a response within the specified time and attached a draft complaint. *See* Letters, Doc. 6-1, at 6-15. The State could prove that such statements are unfair and deceptive by showing, among other things, that MPHJ had not hired local counsel, had not followed its own licensing agreements for the shell companies, and followed a business model that did not contemplate litigation.

[5] MPHJ's reliance on *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), is misplaced. In *Broder*, the plaintiff's state-law claims were premised on the plaintiff's argument that the defendant violated a federal statute. The plaintiff thus had to prove a violation of federal law to prevail on his state-law claims. *Id.* Here, the State does not rely on an underlying violation of federal patent law as the basis for the claim that MPHJ engaged in unfair and deceptive acts.

relying on potential defenses, but also by arguing that each of the State's factual assertions is a distinct "claim" that must be considered separately. This analysis is contrary to Supreme Court precedent and at odds with the plain language of the complaint. In fact, the State asserts a single claim, which is supported by numerous factual allegations. In addition, even if federal patent issues were raised – and they are not – those issues are neither substantial nor capable of resolution without disrupting the federal-state balance, and thus cannot give rise to federal jurisdiction. *See Gunn*, 133 S. Ct. at 1065.

## A. The State's sole claim is that MPHJ engaged in unfair and deceptive acts and practices.

The State's claim, that MPHJ engaged in unfair and deceptive acts in violation of the CPA, is supported by many factual allegations. Each factual allegation is not a separate "claim." Rather, the State may prove that MPHJ's conduct violated the CPA by proving some or all of the facts alleged. MPHJ seeks to rewrite the State's complaint as if each fact stands alone. This position is neither a fair reading of the complaint nor consistent with precedent.

The Supreme Court has recognized that a single legal claim may be supported by alternate factual theories. *Christianson*, 486 U.S. at 810. A claim does not arise under federal law merely because federal law is essential to one factual theory underlying it, if the claim may be proved by an alternate theory that does not involve federal law. As the Court explained in *Christianson*, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a)

9

jurisdiction unless patent law is essential to *each* of those theories." *Id.* (emphasis added).

MPHJ inaccurately describes *Christianson* as taking the opposite approach: deeming "claims" factual and "theories" legal. But that reading of *Christianson* is inconsistent with both the holding and the Court's reasoning. *See* John B. Oakley, *Federal Jurisdiction and the Problem of the Litigative Unit: When Does What "Arise Under" Federal Law?*, 76 Tex. L. Rev. 1829, 1856 (June 1998) ("The classifying principle apparently at work in *Christianson* distinguishes between theories of law and theories of fact."). The *Christianson* Court identified multiple factual theories of monopolization that could support the plaintiff's legal claim of monopolization, and reasoned that only one necessarily raised issues of federal patent law. *See* 486 U.S. at 811-13. Thus, the claim did not arise under federal patent law and the federal court lacked jurisdiction. *Id.* at 812-13. MPHJ suggests that the Court used the terms "theory" and "claim" interchangeably, "as if they had no importance at all." Doc. 18, at 25, n.21. In fact, the Court carefully distinguished between factual theories and legal claims. *See also In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 684-87 (2d Cir. 2009) (plaintiffs' antitrust claim did not arise under patent law where only one of four alternate theories presented by plaintiff raised no substantial patent issue).

*Christianson* controls here and confirms that MPHJ's interpretation of the complaint is untenable. The complaint sets forth numerous allegations, or factual theories, in support of a single claim: MPHJ's conduct violated the CPA. Even if the

Court accepts MPHJ's argument that some of those theories necessarily raise issues of federal patent law (a point the State disputes, *see supra* 4-9), MPHJ concedes that at least some of these theories do not raise federal issues. *See* Doc. 18, at 24, n.20. Because it can be decided without addressing any federal issues, the claim itself does not raise issues of patent law.

MPHJ's own description of consumer protection law cannot be reconciled with its implausible splitting of the complaint into multiple claims. MPHJ acknowledges that, to evaluate whether it engaged in an unfair or deceptive practice, "[t]he court must look to the entirety of the statements or representations made, and the overall context and circumstances, to determine the essential message imparted to and reasonably understood by the average consumer." *State v. R.J. Reynolds Tobacco Co.*, S1087-05 CnC, 96 (Vt. Super. Ct. Mar. 10, 2010).[6] This concept, that "[e]ach claim delivered to the consumer must be interpreted as a whole in the context of all the other facts communicated," *Jordan v. Nissan N. Am.*, 2004 VT 27, ¶7, 176 Vt. 465, 469, 853 A.2d 40, 44, further supports the State's conclusion that each alleged action or inaction by MPHJ is not a separate claim. Rather the single claim is that the aggregate of actions and statements, culminating in sending the letters, constituted an unfair and deceptive act directed toward each of the targeted businesses.

---

[6] MPHJ asserts that the CPA is to be guided by federal antitrust law. Doc. 18, at 28, n.26. In fact, interpretation of the CPA is to "be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act," 9 V.S.A. § 2453(b), which relates to both unfair competition and unfair and deceptive acts. *See* 15 U.S.C. § 45(a). The State's complaint does not assert an unfair competition claim.

MPHJ principally relies on *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), but that case is easily distinguished and does not support MPHJ's position here. *Broder* reasoned that a plaintiff's formal labeling of a single cause of action is not dispositive if, in fact, the cause of action comprises distinct legal claims. *Id.* at 194 ("what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim[,]' . . . [t]he question is whether at least one federal aspect of Broder's complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory."). *Broder* did not, as MPHJ would suggest, conclude that every fact alleged in a complaint constitutes a separate claim. Lower courts have expressly rejected such an overly broad reading of *Broder*. For instance, the district court in *In re Lehman Bros. Sec. and Erisa Litig.*, 2012 WL 983561 (S.D.N.Y. Mar. 22, 2012), acknowledged *Broder*, but emphasized *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), which the court explained "made entirely plain that a *sine qua non* for removal on the basis of an embedded federal question is that the state law claim in which it is embedded 'necessarily' raise the federal issue." *Lehman Bros.*, 2012 WL 983561 at *8. The court found that a federal issue was not necessarily raised when "the State may obtain all the relief it seeks without prevailing on its [federal law factual contention]." *Id.*; s*ee also People of N.Y. ex rel. Cuomo v. First Am. Corp.*, 2008 WL 2676618, at *3 (S.D.N.Y. July 8, 2008) ("The fact that the Complaint includes allegations that Defendants' conduct violates federal laws and regulations does not 'necessarily' raise a federal issue, because the state law violations and

allegedly fraudulent practices . . . support the relief sought without proof of distinct violations of the cited federal provisions. Although the Attorney General could ultimately prevail on the asserted claims by proving a violation of federal law, he need not do so in order to succeed.").

The complaint in *Broder* set forth two logically separate breach-of-contract claims, one grounded in state law and the other based on an alleged violation of federal law. 418 F.3d at 194-95. And the complaint specifically sought a declaration that the defendant violated federal law. *Id*. at 195. Here, in contrast, the State presents one logically cohesive state-law claim. No federal issue is necessarily raised by that claim.

**B. The federal issues presented by MPHJ are not substantial.**

The Court has no need to consider the other parts of the *Gunn* test because MPHJ has not shown that the State's complaint necessarily raises a federal issue. The federal issues identified by MPHJ are merely potential defenses, and even those defenses relate only to some of the State's allegations. If the Court does consider the "substantiality" prong of *Gunn*, however, MPHJ's argument fails on that point as well. MPHJ asserts that the federal patent issues are substantial because they would impact MPHJ's patent enforcement capabilities nationwide. In fact, any state-court decision in this case would be limited to MPHJ's patent enforcement efforts within Vermont.

In *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833 (11th Cir. 2013), the 11th Circuit set forth three factors to determine whether a federal issue was substantial:

> First, a pure question of law is more likely to be a substantial federal question. Second, a question that will control many other cases is more likely to be a substantial federal question. Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question.

*Id*. at 842 (citations omitted). Just as in *MDS*, here "[w]e have a fact-specific application of rules . . . rather than a context-free inquiry into the meaning of a federal law." *Id*. (quotation omitted). Moreover, this case will similarly not "be dispositive of any future actions by the Patent and Trademark Office to grant or deny a patent" nor will it require the court "to determine whether an action of a federal agency complied with a federal statute." *Id*. at 843 (quotations omitted). This case presents fact-bound questions, and its outcome will not control future litigation over the scope and validity of the patents. And there is no government interest in federal adjudication. *Id*. at 842. There is accordingly no basis to conclude that any alleged federal issues are substantial.

### C. The federal-state balance favors state-court adjudication.

The last part of the *Gunn* test, should the Court consider it, also favors the State. Adhering to its theme that any case related to patents must be a federal case, MPHJ advances a policy argument against allowing states to regulate these practices. But MPHJ's complaints about possible state regulation have nothing to do with the subject-matter jurisdiction of the federal courts. If federal law somehow protects MPHJ from liability even if its patent assertion letters are false, deceptive, and unfair, then MPHJ can assert federal preemption as a defense in state court. MPHJ has not, however, shown that the State's claim arises under federal law because a defense grounded in federal law – including patent law – does not create

federal jurisdiction. *See Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983) ("[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts . . . that a federal defense the defendant may raise is not sufficient to defeat the claim[.]"). Furthermore, federal jurisdiction over claims arising under patent law does not prevent state courts from applying established federal patent law when cases properly in state court require it. *See Gunn*, 133 S. Ct. at 1067 (denying federal jurisdiction and explaining that state courts can apply federal patent law when addressing state-law claims); *MDS*, 720 F.3d at 843 ("To hold that all questions of patent infringement are substantial questions of federal law . . . would sweep a number of state-law claims into federal court.").

The cases relied on by MPHJ for the proposition that "the State's claims here would interfere with the Congressional goal" of a unified patent system, Doc. 18, at 38, are distinguishable.[7] The court in *In re Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 2d 326 (E.D.N.Y. 2002), denied the plaintiff's motion to remand, focusing on the substantiality of the federal issues raised. Crucially, however, the claims in *Tamoxifen* required the court "to determine the validity, enforceability or scope of

---

[7] MPHJ relies on several cases that do not even address the scope of federal jurisdiction over claims arising under patent law. *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232-33 (1964) (addressing preemption, the Court explained that "because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying"); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999) (evaluating whether Congress had the power, in enacting the Patent Remedy Act, to abrogate the States' sovereign immunity); *Bonita Boats v. Thunder Craft Boats*, 489 U.S. 141, 168 (1989) (finding that a state law, which provided "patent-like protection for ideas deemed unprotected under the present federal scheme," was preempted).

Zeneca's patent." *Id.* at 333. The State's claim does not require such evaluation.
Here, any decision by the state court would not affect the validity of the patents. *See*
*Gunn*, 133 S. Ct. at 1068. Consideration of the federal-state balance favors allowing
the state court to decide whether MPHJ's conduct violated state law.

### III.   The relief sought by the State is sought to remedy MPHJ's violations of the CPA.

The injunctive relief requested by the State is reasonable, and a court could
award it, without addressing the validity of the patents or any other federal patent
law issue. Along with penalties, the State seeks an injunction to stop MPHJ from
engaging in conduct that the State alleges is unfair and deceptive: threatening
Vermonters with patent infringement suits. MPHJ contends that this relief could be
awarded only if the patents are held invalid, and therefore the State must be
asserting a claim of patent invalidity. Doc. 18, at 30. MPHJ is wrong on both points.
The State's complaint does not seek an adjudication of patent validity or
infringement. And the injunctive relief sought by the State would not require such a
holding. If the State proves that MPHJ engaged in a widespread practice of
threatening litigation in an unfair and deceptive manner, a state court could
prospectively enjoin that conduct, consistent with the CPA and without any reliance
on federal law.

MPHJ's reliance on *Broder* is misplaced. The plaintiff in *Broder* sought a
declaratory judgment that defendant violated a federal law. 418 F.3d at 195. The
Second Circuit understandably relied on that specific request for relief in concluding
that one of the plaintiff's claims arose under federal law. In contrast to *Broder*, here

the State does not seek a declaration of invalidity or infringement, or any other relief grounded in federal law.

In fact, the relief requested by the State is tied closely to the allegations in the complaint and the State's CPA claim. A central allegation in the State's complaint is that MPHJ's threats of immediate litigation were deceptive and unfair. The injunctive relief is thus directly addressed at halting the unfair and deceptive conduct. The fact that threatening to sue for patent infringement is permissible and legal when done properly does not mean that the State's requested relief is beyond the scope of the CPA. In an appropriate CPA case, based on findings of past violations, a court may prospectively enjoin a defendant from engaging in what would otherwise be a legitimate business activity. *See, e.g., State ex rel. Sanborn v. Koscot Interplanetary Inc.*, 512 P.2d 416, 425 (Kan. 1973) (upholding the Kansas Buyers Protection Act against a challenge by defendants enjoined from selling certain cosmetics, the court explained, "[t]he state has the power to regulate a legitimate business which is detrimental to the people if not properly conducted, or to prohibit a business activity found to be essentially injurious to public welfare"); *State v. Shattuck*, 747 A.2d 174, 179-31 (Me. 2000) (explaining that "when the conduct of a merchant repeatedly frightens, terrorizes, or physically endangers the public, and when that conduct is sufficiently outrageous that it may reasonably be understood to have such an effect, that conduct is 'unfair[,]'" the court upheld an order enjoining a motel owner from having contact with motel patrons).

17

Contrary to MPHJ's assertion, injunctive relief would not render the patents invalid – it would not affect the patents at all. It would only govern MPHJ's conduct and only in Vermont. If the State is able to prove that the sole business that MPHJ conducts in Vermont is sending unfair and deceptive letters to Vermont businesses, a court could tailor injunctive relief to protect the public and prevent future violations of the CPA. MPHJ may contest this issue in state court and may argue that the relief should be narrower or that federal law preempts some aspects of the injunctive relief. However, the requested relief is consistent with relief for repeated CPA violations and could be awarded solely on this basis. MPHJ's argument that the Court must read the complaint to include a claim for patent invalidity, which was not raised by the State, is unfounded.

## CONCLUSION

For the reasons given here and in the State's initial memorandum, this case should be remanded to state court.

Dated: October 22, 2013                    STATE OF VERMONT

                                           WILLIAM H. SORRELL
                                           ATTORNEY GENERAL


                                  By:      */s/ Bridget C. Asay*
                                           Bridget C. Asay
                                           Ryan Kriger
                                           Naomi Sheffield
                                           Assistant Attorneys General
                                           Vermont Attorney General's Office
                                           109 State Street
                                           Montpelier, VT 05609
                                           Tel. (802) 828-5500
                                           basay@atg.state.vt.us
                                           rkriger@atg.state.vt.us
                                           nsheffield@atg.state.us

**CERTIFICATE OF SERVICE**

     I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to Andrew D. Manitsky, Esq. and W. Bryan Farney, Esq.


Dated: October 22, 2013              WILLIAM H. SORRELL
                            ATTORNEY GENERAL

                            By:    */s/ Naomi Sheffield*
                            Naomi Sheffield
                            Assistant Attorney General
                            Office of the Attorney General
                            109 State Street
                            Montpelier, VT 05609-1001
                            (802) 828-6906
                            nsheffield@atg.state.vt.us

                            Counsel for Plaintiff