# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| STATE OF VERMONT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:13-cv-170 |
| v. | : | |
| | : | |
| MPHJ TECHNOLOGY INVESTMENTS, | : | |
| LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## Opinion and Order

Plaintiff State of Vermont ("State") brings this action under the Vermont Consumer Protection Act ("VCPA") against Defendant MPHJ Technology Investments, LLC ("MPHJ" or "Defendant"), for sending letters allegedly containing threatening false and misleading statements to Vermont businesses and non-profit organizations. The Vermont Attorney General originally filed this case in Washington Superior Court on May 8, 2013, seeking civil penalties and other relief under state law. MPHJ removed the case to this Court on June 7, 2013, asserting federal question and diversity jurisdiction. The State now moves to remand the case back to state court. MPHJ also seeks to dismiss the case for lack of personal jurisdiction on the grounds that the exercise of personal jurisdiction over Defendant would not comport with the notions of fair play and

1

substantial justice and has also moved for Rule 11 sanctions.
After a motions hearing on February 25, 2014, the State filed a
conditional motion to clarify or amend its complaint.  MPHJ
subsequently moved for summary judgment.  For the reasons stated
below, the Court **grants** the State's motion to remand, ECF No. 9.
Because the Court does not have subject matter jurisdiction, the
remaining motions are **remanded** to the state court for further
resolution.

## I. Factual and Procedural Background

The State brought this action under the VCPA, Vt. Stat.
Ann. tit. 9 §§ 2451 *et seq.*, on the grounds that MPHJ engaged in
unfair and deceptive business practices in Vermont.  Compl. ¶ 1,
ECF No. 6.  MPHJ is a limited liability company ("LLC") that
operates in Vermont through forty wholly-owned shell subsidiary
companies ("Shell LLCs").  ¶¶ 2-3.  MPHJ and its shell LLCs have
addresses in Delaware, but are "managed" by a Texas attorney,
Jay Mac Rust, who is the contact and signatory on all of the
license agreements between MPHJ and its Shell LLCs.  ¶¶ 4-5.
MPHJ owns several patents relating to email scanning[1] that were
filed in 1998 and issued in 2001.  No attempt to enforce the
patents was made until 2012.  Furthermore, MPHJ had engaged in

---

[1] The content of the patents themselves are not relevant to the State's
claims, but MPHJ describes them as covering any system by which a
document is scanned directly to email.

no litigation regarding its patents prior to the State's filing of this lawsuit.  ¶¶ 19-20.

The State bases its claims on a series of allegedly unfair and deceptive letters sent or authorized by Defendant throughout Vermont.  ¶ 9.  The unlawful acts are alleged as follows.  In September 2012, MPHJ's Shell LLCs began sending a series of three letters to numerous small businesses and non-profit organizations operating around Vermont.  ¶¶ 14-16.  These letters are identical in content with the exception of the addressee and the source Shell LLC.  The first letter ("Letter #1") begins by stating, "We have identified your company as one that appears to be using the patented technology" owned by the Shell LLC.  ¶ 22.  It then requests that the recipient either purchase a license from the Shell LLC or confirm that it is not infringing the patents.  ¶ 17.  Letter #1 further notes that the Shell LLC has "had a positive response from the business community to [its] licensing program," that most contacted businesses "are interested in operating lawfully and taking a license promptly," and that many "have responded to this licensing program in such a manner."  ¶ 23.  Letter #1 states that the fair negotiated price for a license is between $900 and $1200 per employee.  *Id.*  The letter concludes by directing that the recipient respond within two weeks of the date of the letter.  *Id.*

The second and third letters ("Letter #2" and "Letter #3")
are sent by a Texas law firm, Farney Daniels LLP (Defendant's
counsel in this action), on behalf of the Shell LLC that sent
Letter #1.  ¶ 27.  Both letters state that because the recipient
has not responded to explain that it has not infringed upon the
patents, the Shell LLC reasonably can only assume that the
recipient is using infringing technology and requires a license.
¶ 28.  Letter #3 says that if the recipient does not respond
within two weeks, "our client will be forced to file a Complaint
against you for patent infringement in Federal District Court
where it will pursue all of the remedies and royalties to which
it is entitled" and encourages the recipient to retain patent
counsel.  ¶ 31.  Letter #3 (and sometimes Letter #2) also
attaches a draft complaint against the receiving business naming
the Shell LLC as plaintiff.  ¶ 32.  Some Vermont businesses have
claimed that they never received Letter #1 or #2, and only
received Letter #3 referring to the prior (unreceived) letters
and threatening legal action.  ¶ 29.

The Complaint alleges that these letters were false,
deceptive, and misleading in violation of the VCPA because (1)
Defendant did no due diligence to confirm whether the recipients
were likely infringers; (2) Defendant targeted small businesses
in commercial fields unrelated to patent law; (3) Defendant had
not actually received a positive response regarding its

4

licensing program; (4) only a very small fraction of recipient businesses had purchased licenses (rather than "many" or "most" as indicated in the letters); (5) as of the time of the complaint, neither Defendant nor any of its Shell LLCs had filed a single lawsuit in Vermont or any state, even though over 130 days had passed since the supposed two week deadline; (6) as of the time of the letters, Defendant had not retained local Vermont counsel; (7) each Shell LLC claimed to possess an exclusive license, but given the overlapping geographic assignments, the Shell LLCs did not actually possess exclusive licenses; and (8) the Shell LLCs often targeted businesses outside the geographic regions in which they were legally permitted to enforce the patents.  Based upon these alleged misrepresentations and falsities, the State contends that Defendant sent the letters in bad faith.  ¶ 54.

The State's Complaint therefore claims that Defendant engaged in unfair trade practices in violation of Vt. Stat. Ann. ch. 9 § 2453(a) by falsely threatening litigation where Defendant was neither prepared or likely to bring such litigation, implying that pre-suit investigation had been performed, targeting businesses too small to have the resources to fight such litigation, and providing no independent proof of infringement in the letters, thereby shifting the burden to the recipients.  ¶ 56.  The Complaint also alleges that Defendant

engaged in deceptive trade practices by including deceptive statements in the letters that would lead consumers to believe that they would be sued if they did not respond or pay for licenses, that the Shell LLCs were the exclusive licensees entitled to enforce the patents, and that the program had received a positive response from the business community and that many or most businesses were interested in purchasing such a license.  ¶ 57.

The Complaint requests relief in the form of a permanent injunction prohibiting Defendant from engaging in further unlawful business activity in Vermont and from sending letters threatening Vermont businesses with patent-infringement lawsuits, full restitution to businesses that suffered damages due to the unlawful acts, civil penalties of up to $10,000 per violation of the VCPA, costs and fees to the State of Vermont, and any other relief deemed appropriate by the Court.

On or around June 7, 2013, MPHJ removed the case to this Court, asserting federal question under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a).  MPHJ maintains that federal "arising under" jurisdiction is established because the validity, infringement, and enforcement of the patents referenced in the letters fall within the original and exclusive jurisdiction of the federal courts.  *See* 28 U.S.C. § 1338.  MPHJ also asserts that subject matter

jurisdiction can be sustained on diversity grounds based on the theory that the State brought the suit on behalf of Vermont businesses, thereby making them the real party in interest for purposes of diversity jurisdiction.

There are several motions pending before the Court. The State has moved to remand the case to state court on the grounds that the complaint does not raise a claim arising under federal law and that the State is not a citizen for purposes of diversity jurisdiction. MPHJ has moved to dismiss the case for lack of personal jurisdiction and requested that the Court decide the issue of personal jurisdiction before turning to the question of subject matter jurisdiction, ECF No. 16. In response, the State has moved to stay briefing and decision on MPHJ's motion to dismiss until the motion to remand has been decided, ECF No. 20. MPHJ has also filed a motion for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, ECF No. 38. After a hearing on the pending motions on February 25, 2014, the State also filed a conditional motion to clarify and/or amend the complaint. Finally, MPHJ has moved for summary judgment under Rules 12(d) and 56.

## II. DISCUSSION

The Court's jurisdiction has been challenged for lack of subject matter jurisdiction (by the State) and for lack of personal jurisdiction over MPHJ (by MPHJ). The Court has the

discretion to consider these jurisdictional issues in the order of its choosing.[2]  Because the Court determines that it does not have subject matter jurisdiction to hear this case, it does not reach the issue of personal jurisdiction.

### A. Motion to Remand

The State has moved to remand this case to state court on the grounds that the Court lacks subject matter jurisdiction. Any case filed in state court that "originally could have been filed in federal court" may be removed.  *MyInfoGuard, LLC v. Sorrell*, Nos. 2:12-cv-074, 2:12-cv-102, 2012 WL 5469913, *3 (D. Vt. Nov. 9, 2012) (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 51 (2d Cir. 1998)).  As the removing party, MPHJ "bears the burden of establishing jurisdiction."  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).  Defendant MPHJ removed this case to federal court by asserting subject matter jurisdiction under both federal "arising under" jurisdiction, 28

---

[2] MPHJ has asked the Court to decide the motion to dismiss for lack of personal jurisdiction before the motion to remand (presumably on the assumption that the Court would dismiss the case based on the former). The Supreme Court has indicated that courts have discretion to decide personal jurisdiction before subject matter jurisdiction as "there is no unyielding jurisdictional hierarchy." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).  In *Ruhrgas*, the Supreme Court found it may be appropriate to determine personal jurisdiction first where the personal jurisdiction inquiry presents no complex questions and subject matter jurisdiction raises a "difficult and novel" question. *Id.* at 588.  In this case, both jurisdictional analyses are arguably equally complex and the Court finds it appropriate to consider subject matter jurisdiction first.  *See id.* at 587-88 (finding that "in most instances . . . expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of [subject matter jurisdiction] first").

U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332(a).
In its motion to remand, the State contends that neither type of
subject matter jurisdiction is established here.  First, the
State argues that the Court lacks federal question jurisdiction
because the consumer fraud claims are based solely in state law
and are unrelated to the validity of MPHJ's patents.  As a
result, there are no federal patent law questions on the face of
the complaint.  Second, the State submits that diversity
jurisdiction cannot be established because the State of Vermont
is the real party in interest, thereby destroying diversity.
The two grounds for federal jurisdiction will be addressed
individually below.

### i. Federal Question Jurisdiction

MPHJ contends that removal of this case is properly
supported by federal question jurisdiction.  Federal district
courts have "original jurisdiction" over "all civil actions
arising under the Constitution, laws, or treaties of the United
States."  28 U.S.C. § 1331.  A case "arises under" federal law
within the meaning of § 1331 where the "well-pleaded complaint
establishes either that federal law creates the cause of action
or that the plaintiff's right to relief necessarily depends on
resolution of a substantial question of federal law."  *Franchise
Tax Bd. of Cal. v. Construction Laborers Vacation Trust for
Southern Cal.*, 463 U.S. 1, 27-28 (1983).

MPHJ argues that the Complaint presents a federal question because it regards the validity, infringement, and enforcement of patents, which fall within the original and exclusive jurisdiction of the federal district courts.  28 U.S.C. § 1338 (establishing that federal district courts have original and exclusive jurisdiction over cases "arising under" federal patent law).  While federal patent jurisdiction is exclusive, it is still subject to the jurisdictional requirements elucidated by *Franchise Tax Bd.*; that is, "[t]he Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy."  *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478 (1912).  Thus, as with all federal question inquiries, there are two ways to establish federal question jurisdiction "arising under" the patent laws: (1) by showing that federal patent law *created* the cause of action; or (2) by showing that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988).

The State's complaint here is premised solely on Vermont state law, not federal patent law, and none of the claims for relief concern the validity of MPHJ's patents.  Therefore,

federal patent law did not "create" the cause of action such to satisfy the first type of "arising under" jurisdiction. *See ClearPay, Inc. v. Abecassis*, 602 F.3d 1364, 1367 (Fed. Cir. 2010) (finding federal patent law did not "create the cause of action" where complaint was entirely devoted to state law causes of action). Instead, for federal jurisdiction to exist here, the State's right to relief must "necessarily depend[] on resolution of a substantial question of federal patent law." *Christianson*, 486 U.S. at 808-09.

The *Christianson* standard may be satisfied by a complaint containing only state law claims (as is the case here); however, this is a "special and small category" with imprecise boundaries. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). In such cases, the Court must ask whether the federal patent law issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. Where all of these requirements are met, federal jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005). In this case, federal question jurisdiction cannot be established under *Gunn* because, on the face of the State's well-

11

pleaded complaint, patent law issues are not "necessarily raised" nor are they sufficiently "substantial" to support a finding of federal jurisdiction.

### 1. Federal Patent Law Issues Are Not "Necessarily Raised" On the Face of the State's Complaint.

Under the well-pleaded complaint rule, the determination of whether a claim arises under patent law depends on what "necessarily appears in the plaintiff's [complaint], unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Christianson*, 486 U.S. at 809 (quoting *Franchise Tax Bd.*, 463 U.S. at 10).  A patent law issue is "necessarily raised" when "at least one of the plaintiff's claims must necessarily turn on an issue of federal patent law." *ClearPay*, 602 F.3d at 1369 (applying *Christianson*).  It is "not enough that patent law issues are in the air" for purposes of arising under jurisdiction; instead, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Christianson*, 486 U.S. at 810.

For example, in *ClearPay*, the Federal Circuit found that no questions of federal patent law were necessarily raised even where questions of patent infringement were addressed and could arise in the course of litigation, because for each asserted

claim (there, several state common law and statutory claims)
there was "at least one theory of relief that would not require
the resolution of a patent law issue."  602 F.3d at 1368.

While *ClearPay* and *Christianson* regarded the § 1338(a)
jurisdiction of the Federal Circuit over claims "arising under"
federal patent law rather than federal question jurisdiction
under § 1331, the federal courts "have interpreted the phrase
'arising under' in both sections identically, applying [] § 1331
and § 1338(a) precedents interchangeably." *Gunn*, 133 S. Ct. at
1064 (noting that); *see also Discovision Assocs. v. Fuji Photo
Film Co., Ltd.*, No. 07 Civ. 6348, 2007 WL 5161825, *6 (S.D.N.Y.
Oct. 29, 2007) (remanding because "at least one arguable theory
exists to support Plaintiff's claim that does not rely on
resolution of a federal patent question"); *Ciprofloxacin
Hydrochloride Antitrust Litig.,* 166 F. Supp. 2d 740, 748
(E.D.N.Y. 2001) (remanding where plaintiffs' "allegations make[]
plain that plaintiffs have asserted at least one theory by which
they may establish state antitrust violations without resorting
to a determination of patent law"); *Altman v. Bayer Corp.*, 125
F. Supp. 2d 666, 674-75 (S.D.N.Y. 2000) (remanding where
plaintiff alleged that defendants "acted with impure heart" in
bringing patent litigation because plaintiffs could prevail
without resolution of any substantial question of patent law);
*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.

Supp. 2d 1042, 1053 (D. Kan. 1999) (finding that patent law was not necessarily raised because any question of patent validity was "merely tangential" to claim that defendant had an ill motive); *In Re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819 (E.D. Mich. 1999) (finding no federal jurisdiction over state law claims even where arose from instigation of patent litigation).

Applying *Christianson* to this case, the State's complaint does not "necessarily raise" federal issues because its claims do not depend on any determination of federal patent law.  The State's claims do not challenge the validity or scope of MPHJ's patents nor do they require any determination of whether infringement has actually occurred.  Instead, the State is targeting bad faith conduct irrespective of whether the letter recipients were patent infringers or not, on the basis that MPHJ's bad faith conduct would be unlawful even MPHJ's patents were valid and the conduct was directed toward actual patent infringers.  *See Tamoxifen*, 222 F. Supp. 2d at 232 (opining that where "defendants are alleged to have engaged in sham patent infringement litigation for the purpose of delaying generic drug competition[, p]roof of sham litigation would certainly seem to be outside the scope of protected activity under a valid patent").  As the State maintains in its motion to remand, this case is about consumer protection, not about patents.

14

To the extent that federal patent law is implicated at all, it is in MPHJ's anticipated defenses, which cannot provide the basis for federal question jurisdiction.  *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (finding that a defense that raises a federal question is inadequate to confer federal jurisdiction); *In re Ciprofloxacin*, 166 F. Supp. 2d at 748 (finding "defendants' assertion that their patent law rights provides a viable defense to plaintiff's state law" to be "an insufficient basis" for federal question jurisdiction). Instead, the State's complaint brings claims solely under state law for unfair and deceptive practices and its claims are premised on multiple theories that do not implicate federal patent law.

The State supports its unfair trade practices claim by noting that MPHJ implied that it had done a pre-suit investigation where it had done none and stated that litigation would be brought when it "was neither prepared nor [was it] likely to bring litigation."  Compl. ¶ 56.  The State would not have to address any patent law questions to argue before a jury that MPHJ was unprepared to bring litigation in Vermont at the time it sent the threatening letters—for example, the State could introduce evidence that MPHJ had not retained local counsel and that it had never actually brought patent enforcement litigation.  Thus, "at least one arguable theory

exists to support Plaintiff's claim that does not rely on resolution of a federal patent question." *Discovision Assocs.*, 2007 WL 5161825, at *6.[3]  The same is true of the State's deceptive trade practices claim, which rests on MPHJ's allegedly deceptive statements that it would sue target businesses if they did not respond in two weeks, that many or most businesses were interested in purchasing licenses, and that the licensing program had received a positive response from the business community.  Compl. ¶ 57.  To prevail on this claim, the State could show that very few companies had actually purchased licenses and that it the program had not been received positively—again, without ever raising any questions of patent law.

The facts of this case contrast deeply with cases where courts found remand inappropriate because "plaintiffs [could] not succeed on their claims without proving the invalidity or enforceability" of the patents in question.  *In re Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 2d 326, 331 (E.D.N.Y. 2002); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998) (finding federal question

---

[3] MPHJ argues in its Opposition that the sending of such letters is protected by the First Amendment and federal patent law.  *See, e.g.*, *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers.").  Again, this argument sounds in *defense* and does not support a finding of subject matter jurisdiction here.  Moreover, the question of whether this activity would even be protected by a patent law defense would rest on a showing of good faith, which the State argues is not present here.

16

jurisdiction where a required element of a state claim
"necessarily raised" federal law because all theories
demonstrating the element implicated patent law question).  For
example, in *Hunter Douglas*, the plaintiffs brought a state law
claim of "injurious falsehood" based on the defendant's
assertion that they held exclusive patent rights, and charged
that the assertion was false because the patents were invalid
and unenforceable.  153 F.3d at 1329.  The court determined that
it had federal question jurisdiction because a required element
of the state cause of action—falsity—necessarily turned on a
question of patent law, as no other basis for falsity was
provided in the complaint.  *Id.*  By contrast, the State here is
challenging MPHJ's bad faith acts, not its ability to protect
its patent rights.  The unfair and deceptive trade claims are
supported by several factual bases that do not require an
assessment of MPHJ's patent rights.  Because these theories
could provide a basis for the State to prevail on its claims
without any determination of patent law or of the validity of
MPHJ's patents, there are no federal patent law issues
"necessarily raised" on the face of the State's complaint, and
this Court does not have federal question jurisdiction.

In its opposition to the State's motion to remand, MPHJ
puts forth a somewhat tortured interpretation of *Christianson* to
assert that each factual basis for the State's VCPA "theory" is

17

a separate claim, and that some of these bases necessarily implicate federal issues.  MPHJ cites *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), in support of this argument; however, *Broder* does not actually stand for MPHJ's assertion that each factual basis comprises a distinct legal claim.  In *Broder*, the claim in question was styled as a claim for deceptive trade practices under state law.  The claim was based on two separate legal arguments: that the defendant had violated the federal uniform rates provision, and that it had violated a state notice provision.  *Id.* at 194.  The court found that this was not one claim supported by two alternative theories, but instead encompassed two distinct legal claims.  *Id.*  It found this in part by looking to the relief requested—as part of the complaint, the *Broder* plaintiff sought a declaratory judgment stating that the defendant had violated the federal uniform rates provision.  *Id.* at 195.  The court therefore determined that the federal aspect was a "logically separate claim, rather than merely a separate theory that is part of the same claim as the state-law theory," *id.* at 194, and concluded that the plaintiff had brought a claim (violation of the federal rates provision) that necessarily required resolution of a federal issue, *id.* at 195.

MPHJ argues that the State has similarly styled its complaint as one claim under the VCPA in an effort to hide

18

"logically separate claims" that present "at least one federal
aspect" as in *Broder*.  *Id.* at 192.  However, the State's VCPA
claims are not supported by multiple separate legal claims;
instead, they are supported by multiple factual assertions—for
example, that MPHJ was threatening litigation it was not
actually prepared to bring, that it had not performed any pre-
suit investigation, and that the letters contained false
information.  These are not separate legal claims in the sense
contemplated by *Broder* as it is not required that the State
prevail on each of these factual theories to obtain the relief
it seeks.  *Cf. Broder*, 418 F.3d at 195 (because "[o]ne of the
key characteristics of a mere "theory," as opposed to a distinct
claim, is that a plaintiff may obtain the relief he seeks
without prevailing on it," plaintiff's request for declaratory
judgment on federal rates provision violation was a distinct
claim).

MPHJ also argues that the complaint seeks relief—an
injunction prohibiting MPHJ from sending letters threatening
litigation to Vermont businesses—that necessarily raises federal
patent issues because the injunction would prevent MPHJ from
enforcing its patents in the state.  However, the complaint
itself, and the State's position at the hearing,[4] make plain that

---

[4] In addition, after the February 24, 2014, hearing, the State filed a
conditional motion to amend or clarify the complaint to delete its request
for an injunction requiring MPHJ to stop threatening Vermont businesses with

the remedy sought is not to prevent MPHJ from lawfully enforcing its patent rights in the state, but rather to prevent MPHJ from engaging in activity that violates state law.  Furthermore, it would not be necessary, as in *Broder*, for the State to demonstrate that MPHJ's patents are invalid under federal law in order to obtain this relief.  Thus, the injunctive relief sought by the State does not convert its claim into one "arising under" federal patent law.

MPHJ repeatedly argues that the letters are permitted by federal patent law and the First Amendment, and that MPHJ was required by federal law to make an inquiry of a potential patent infringer as to its potential infringement.  True or not, this position is irrelevant to the Court's jurisdictional inquiry. The federal laws that MPHJ raises are all defenses to its allegedly unfair and deceptive practices, and anticipated federal defenses do not support federal question jurisdiction, even when they are the sole issue in question.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that

_____

patent-infringement lawsuits, clarifying that the State did not intend to "seek relief that would broadly prevent MPHJ from engaging in lawful patent-enforcement activities."  Mot. Amend. 2.  This proposed clarification is consistent with the Court's reading of the original complaint; however, because the Court lacks subject matter jurisdiction, it will not grant the motion to amend, but instead allow the motion to proceed in state court.

the federal defense is the only question truly at issue."). MPHJ also argues that federal jurisdiction is established because the State seeks remedies that could be preempted by federal patent law.[5] However, "[f]ederal pre-emption is ordinarily . . . a defense to the plaintiff's suit," and "[a]s a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Federal patent law does not appear on the face of the complaint and the State may prevail on its VCPA claims without reliance on the resolution of a federal patent question. As a result, federal law is not "necessarily raised" on the face of the complaint, and federal question jurisdiction cannot be established here.

### 2. The State's Complaint Does Not Raise a Substantial Federal Question

---

[5] It is true that MPHJ may assert federal patent law as a defense to the State's claim, as "[f]ederal patent law preempts state-law tort liability for a patent-holder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software*, 362 F.3d at 1374. State law claims can only survive such preemption to the extent that they are based on a showing of "bad faith" on the part of the patent-holder. *Id.* While this issue will inevitably be litigated down the line (and the State argues that MPHJ has shown bad faith and is not entitled to the preemption defense), the looming prospect of preemption is an anticipated defense which, as noted above, does not affect the Court's jurisdictional inquiry. *See Forrester Envtl. Servs., Inc. v. Wheelabrator Technologies, Inc.*, 715 F.3d 1329, 1335 (Fed. Cir. 2013) (finding that anticipated preemption defense "does not authorize removal to federal court").

Even if the Court were to find that federal questions were necessarily raised, federal jurisdiction would still be lacking under a separate *Gunn* factor: that the necessarily raised federal issue be a "substantial" one.  Whether a federal issue is substantial does not turn on the importance to the particular parties bringing the suit, but instead whether it is important "to the federal system as a whole."  *Gunn*, 133 S. Ct. at 1066. In determining the substantiality of a federal question, the Supreme Court has distinguished between cases where the federal law in question was a "pure issue of law [that would be] dispositive of the case and controlling in numerous other cases" and cases where the federal inquiry is "fact-bound and situation-specific."  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (distinguishing *Grable*, 545 U.S. 308).  This case plainly concerns the latter scenario.  The federal patent issues that MPHJ identifies in its brief—namely, the evidence necessary to threaten patent litigation—involve the application of existing patent law to the facts of this case, and require no determination of patent law that would have implications reaching beyond the parties to this proceeding.

MPHJ argues that the State's claims would impact the overall functioning of the national patent system because it would impair pre-suit investigation, create "unprecedented patent infringement immunity," and impair sending of notice

22

letters.  This is a gross mischaracterization of the State's
requested relief.  In fact, the State seeks to enjoin MPHJ's
*unfair and deceptive* activities within Vermont—that is, the
Attorney General is targeting MPHJ's practice of letters that
threaten patent litigation with no intention of *actually
bringing* such litigation.  Contrary to MPHJ's assertions, the
State does not argue that MPHJ does not have a right to lawfully
protect its patents and judgment for the State would not
"immunize" infringing entities from MPHJ's legitimate efforts to
enforce its patents.

Moreover, MPHJ has not demonstrated that this case needs to
be heard in federal court to prevent disruption of the federal-
state balance.  The federal issues implicated are all defenses
that may be properly considered and applied by a state court.
*See Gunn*, 133 S. Ct. at 1067 (explaining that state courts can
apply federal patent law when addressing state-law claims).  As
the decision in this case would have no precedential effect on
federal law—and, indeed, would not even require a determination
of the validity of MPHJ's patents—it would not have an
unacceptable impact on the federal patent system such to demand
federal jurisdiction.

Because the State's right to relief does not necessarily
depend on resolution of a substantial question of federal patent

law, this Court does not have subject matter jurisdiction over this case under 28 U.S.C. § 1331.

### ii. Diversity Jurisdiction

MPHJ also cannot establish federal jurisdiction on diversity grounds.  28 U.S.C. § 1332(a)(vesting jurisdiction in federal district courts over suits between "citizens of different states" where the amount in controversy exceeds $75,000).  Diversity jurisdiction requires "complete diversity," that is, each defendant must be "a citizen of a different state from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  The Supreme Court has made clear that a state is "not a 'citizen' for purposes of the diversity jurisdiction." *Moore v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973); *see also MyInfoGuard*, 2012 WL 5469913, at *4 (finding that state is not a citizen for purposes of diversity jurisdiction).  In its removal action, MPHJ asserted that the Attorney General filed the suit on behalf of Vermont businesses, making their citizenship relevant to the diversity jurisdiction inquiry.  *See Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 461 (1980) (explaining that courts must "rest [diversity] jurisdiction only upon the citizenship of real parties to the controversy").  MPHJ therefore submits that the State is not the "real party in interest" relevant to the determination of diversity jurisdiction.

24

The "party in interest" is determined by looking at the "essential nature and effect of the proceeding." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 218 (2d Cir. 2013) (quotations omitted).  In this case, the fact that the State brought the VCPA action on behalf of itself, and not on behalf of private businesses, is made clear by the relief sought—a statewide injunction and civil penalties that would be unavailable to private litigants.  The requested remedies demonstrate that the State brought the case on behalf of itself and not individual businesses.  *See MyInfoGuard*, 2012 WL 5469913, at *5 ("The fact that the State seeks civil penalties and a statewide injunction . . . – remedies unavailable to consumers – leaves no doubt that the State has concrete interests in the litigation; put simply, the benefits of those remedies flow to the State as a whole.").  Because the State is the true party in interest, there is no diversity and subject matter jurisdiction cannot be established under § 1332(a).  MPHJ apparently concedes this point as it does not address diversity jurisdiction in its opposition to the State's motion to remand.

Because this case could not have been filed in federal court under either § 1331 or § 1332(a), the Court grants the State's motion and remands the case to the Washington Superior Court.

**CONCLUSION**

For the reasons stated above, the Court **grants** the State's motion to remand this case to the state court.  Because the Court does not have jurisdiction, the remaining motions are **remanded** to the state court for further resolution.

Dated at Burlington, in the District of Vermont, this 14th day of April, 2014.

/s/ William K. Sessions III
William K. Sessions III
United States District Judge
